John Paul FREDERICKS; James Richard Ostraco, Appellants,

v.

M. Wayne HUGGINS, Appellee.

No. 82–6731.

United States Court of Appeals, Fourth Circuit.

Argued April 13, 1983.

Decided July 6, 1983.

Gregg H. Levy, Washington, D.C. (Peter J. Nickles, Catherine W. Brown, Covington & Burling, Washington, D.C., Chris Beatley, Stanton & Beatley, Alexandria, Va., on brief), for appellants.

John J. Brandt, Arlington, Va. (Robert S. Corish, Slenker, Brandt, Jennings & Johnston, Arlington, Va., on brief), for appellee.

Before MURNAGHAN, SPROUSE and ERVIN, Circuit Judges.

MURNAGHAN, Circuit Judge:

John Paul Fredericks and James Richard Ostraco ("the detainees") seek reversal of a district court order dismissing their claims for declaratory, injunctive and compensatory relief under 42 U.S.C. § 1983. The detainees claim that while they were held in pretrial detention they were unconstitutionally denied methadone detoxification and thus forced to undergo "cold turkey" withdrawal from their heroin addiction. The damage aspect of the case was submitted to a jury before a magistrate. The jury found in the defendant sheriff's favor. The magistrate recommended a denial of any injunctive or declaratory relief.

Both Fredericks and Ostraco were detained at the Fairfax County Jail in the fall of 1981. At the time of their admission to the jail, both were participating in methadone maintenance programs for their heroin addiction. When Ostraco was first detained he informed a jail official and a member of the jail's medical staff of his participation in the Alexandria methadone treatment program. He requested methadone detoxification several times, but was denied it. Within a day of his incarceration, he began experiencing withdrawal symptoms; the symptoms are alleged to have lasted twenty-five days. Although Ostraco was not given any medication nor seen by the jail physician he was observed daily by paramedical personnel who monitored his vital signs and general condition. On Fredericks' arrival at the jail, he informed the booking officer and a paramedic of his participation in the methadone maintenance program at the Trust Clinic, in Washington, D.C.; his request to contact the program was denied. Fredericks had withdrawal symptoms varying in their severity, for approximately four weeks. Jail personnel refused to detoxify him, but gave him Tylenol several times

during his stay. Paramedics monitored his vital signs.

The detainees assert that they underwent severe symptoms attributable to withdrawal from methadone. The sheriff's evidence completely contradicted that assessment. In its *de novo* review, the district court stated:

> The plaintiffs testified to severe withdrawal symptoms. The jail personnel to the contrary. Given the tendency of a drug dependent person to exaggerate his or her symptoms in order to obtain drugs, the court is inclined to accept the jail personnel's testimony, as did the magistrate. Whether the jury did is speculation, since its verdict could have been based on other considerations. The jury's verdict is certainly not inconsistent with this view.

■ The detainees first contend that the jail's refusal to allow them to be detoxified and forcing them instead to undergo cold turkey withdrawal constituted unconstitutional punishment. In *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), the Supreme Court enunciated the standard for determining the constitutionality of conditions of pretrial confinement. Although the Court held that a detainee may be subjected to only such "restrictions and conditions" of confinement as "do not amount to punishment, or otherwise violate the Constitution," *id.* at 536–37, 99 S.Ct. at 1873, the Court delineated its view as to what in fact would be deemed punitive:

> Not every disability imposed during pretrial detention amounts to "punishment" in the constitutional sense . . . . Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment . . . .

*Id.* at 537, 540, 99 S.Ct. at 1873, 1874.

Here the sheriff did express his security concern about introducing methadone into the Fairfax County Jail. "[J]ail authorities have a legitimate security concern in limiting exposure of inmates to drugs, even those administered on a controlled basis." *See Inmates of Allegheny County Jail v.*

*Pierce,* 612 F.2d 754, 761 (3d Cir.1979). Moreover, "in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to [security] considerations, courts should ordinarily defer to [jail officials'] judgment in such matters." *Bell v. Wolfish,* 441 U.S. at 548, 99 S.Ct. at 1879. The fact that other jails in Virginia have instituted programs whereby personnel from local clinics come and administer liquid methadone in the presence of jail officials is not determinative of the particular security needs of the Fairfax County Jail. Sheriff Huggins cited a number of problems with allowing outside personnel into the jail to administer the methadone.

Also indicative of the non-punitive character of the sheriff's actions was the fact that the jail had a well-developed procedure for handling inmates with drug withdrawal problems that had been approved by the American Medical Association. Indeed, the jail was the first in Virginia to be so accredited and only the seventeenth in the nation. It appears from the record that the medical staff consistently and carefully observed and charted the medical condition of the detainees throughout withdrawal periods.

Thus, we conclude that the jail's refusal to detoxify the detainees did not constitute unconstitutional punishment.

Second, the detainees argue that because the methadone maintenance programs in which they participated were state and federally licensed, and thus subject to certain regulations concerning detoxification, they had a government induced expectation that their methadone dependency would be terminated only by a prescribed program of detoxification. Further, they contend that that expectation constituted a liberty interest protected by the due process clause of the fourteenth amendment. Thus, they contend, the sheriff's refusal to allow them to be detoxified violated their due process rights.

The detainees rely on regulations from the Virginia Department of Mental Health

and Mental Retardation which govern the licensure of methadone maintenance programs. Virginia Department of Mental Health and Mental Retardation, Rules and Regulations for the Licensure of Substance Abuse Treatment and Rehabilitation Facilities, Part III. Section 19.03 of the relevant regulations states that "[b]efore leaving the program, a patient shall be given the opportunity for detoxification from methadone according to a plan approved by the medical director of the program." Section 19.01 of the same regulations provides that patients may be dismissed from the program for conduct such as "conviction of a misdemeanor or felony." The combination of these two provisions, detainees suggest, gives rise to the constitutionally protected interest in being detoxified, no matter where the patient finds himself. They further argue that such a position is buttressed by a federal regulation, 42 C.F.R. § 2.33 (1982), which permits a licensed program to release confidential information about its patient if that patient finds himself incarcerated.[1] Nowhere does either the state or federal regulation state that a patient is *entitled* to detoxification if he should find himself incarcerated.[2]

 The interplay of the federal and state regulations may indeed give rise to a suggestion that in certain circumstances a patient *may be able* to obtain detoxification. However, absent clear statutory or regulatory language to the contrary, an individual's "right" to detoxification is foregone once he is incarcerated in a penal institution that is unable to provide it. *See Inmates of Allegheny County Jail v. Pierce, supra.* "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston,* 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948). Even if the regulatory language does, in general, as applied to unincarcerated persons, create a constitutionally protected entitlement, the fact of confinement as well as the legitimate goals and policies of the penal institution limit such rights. *See Jones v. North Carolina Prisoners' Union,* 433 U.S. 119, 125, 97 S.Ct. 2532, 2537, 53 L.Ed.2d 629 (1977). Incarceration curtails a number of the rights of detainees as well as those of convicts. *Bell v. Wolfish,* 441 U.S. at 546, 99 S.Ct. at 1878 ("A detainee simply does not possess the full range of freedoms of an unincarcerated individual.").

Therefore, on this record, we cannot find a constitutionally protected liberty interest in methadone detoxification once an individual is incarcerated in a state jail. The judgment of the district court is affirmed.

AFFIRMED.

1. The federal regulation clearly does not imply an entitlement: "confirmation of the patient's status and information necessary to appropriately continue or modify his medication *may* be given *to medical personnel in a position* to provide services to the patient." 42 C.F.R. § 2.33 (1982) (emphasis supplied).

2. In contrast, Maryland and Pennsylvania have enacted legislation which expressly makes detoxification mandatory in all state prisons and jails.

The Maryland statute provides in pertinent part:

Methadone treatment for prisoners determined to be drug addicts.

Any prisoner detained in any local or State penal institution who is determined to be a drug addict by a physician shall be placed on a program of methadone detoxification with proper supervision if the treatment is prescribed by a physician .... The State of Maryland shall provide funding for this program.

Md.Ann.Code art. 27, § 700F (Cum.Supp.1982).

The Pennsylvania law states, in relevant part, that:

Drug or alcohol abuse services in correctional institutions, juvenile detention facilities and on probation and parole.

.... Medical detoxification and treatment shall be provided for persons physically dependent upon alcohol or controlled substances at correctional institutions and juvenile detention facilities or in available appropriate medical facilities.

Pa.Stat.Ann. tit. 71, § 1690.106 (Cum.Supp. 1982).