Isaiah GILL a/k/a Terrence Spiller, Petitioner,

v.

UNITED STATES PAROLE COMMISSION, et al., Respondents.

Civ. A. No. 88–0258–AM.

United States District Court, E.D. Virginia, Alexandria Division.

July 22, 1988.

Revised Aug. 16, 1988.

Isaiah Gill, F.C.I. Petersburg, Petersburg, Va., pro se.

Dennis E. Szybala, Asst. U.S. Atty., Alexandria, Va., for respondents.

## MEMORANDUM OPINION

ELLIS, District Judge.

In this habeas case, Isaiah Gill challenges the legality of his detention in federal prison for federal and District of Columbia convictions.[1] In response to the petition, the United States filed a motion to dismiss or for summary judgment. Thereafter, Gill filed a traverse to the return with supporting facts. Upon consideration of the pleadings and supporting materials filed by the parties, the Court finds Gill's claims without merit. Summary disposition based on the record is appropriate because the materials submitted by the parties conclusively show that Gill is not entitled to relief. See Raines v. United States, 423 F.2d 526 (4th Cir.1970). Accordingly, the respondents' motion is granted and this action is dismissed.

### FINDINGS OF FACT

Isaiah Gill is currently an inmate at the Federal Correctional Institution, Petersburg, Virginia, serving an aggregate 14–year federal and District of Columbia sentence. The pleadings admit the following prison sentences:

(1) a 5–year probation sentence on a conviction for possession of stolen mail and attempted uttering imposed on October 7, 1977 in the United States District Court for the District of Columbia. Probation was revoked on April 4, 1979 by the District Court, which recommended that petitioner serve his sentence in a federal institution and receive drug treatment. Gill expected parole from this sentence on July 16, 1980;

(2) two 2–6 year concurrent sentences for forgery and uttering and one 1–3 year sentence for receiving stolen mail entered by the Superior Court of the District of Columbia on May 29, 1980. The sentence imposed for receiving stolen mail was ordered to run consecutively to the sentences imposed for forgery and uttering. Aggregating 9 years,[2] these sentences were also ordered to run consecutively to the prior 5–year federal sentence.

Upon notification of the District of Columbia arrests and convictions, the United States Parole Commission reopened petitioner's case and scheduled a new initial hearing. Petitioner's parole was held in abeyance until the parole hearing on September 19, 1980. As a result of the hearing, the 5–year federal sentence was aggregated with the 9 years imposed by the District of Columbia court, with the result that petitioner's presumptive parole date of July 16, 1980 was set back almost three years to May 9, 1983. The result of this setback was that petitioner was required to serve 56 months of the aggregated sentence rather than immediately released on parole from the federal sentence. This recommended delay in the presumptive parole

---

1. Petitioner brought this action conveniently, but incorrectly, on forms provided to federal prisoners for 28 U.S.C. § 2255 petitions. Because petitioner's claims challenge the execution of sentences and Parole Commission decisions, they are cognizable under 28 U.S.C. § 2241, not § 2255. Accordingly, the Court has construed the claims as if brought under the appropriate statute.

2. The nine-year term results from adding the six-year maximum imposed for the forgery and uttering convictions with the three-year maximum for the remaining sentences.

date was adopted by the Parole Commission on October 10, 1980.

Gill was released on parole to the District of Maryland on June 9, 1983 after a short pre-release stay at a community treatment center. On February 14, 1985, petitioner was arrested and charged with theft in Maryland. The charges were later dismissed. Accordingly, a parole violator warrant was not requested. Gill was again arrested January 29, 1987 and charged with theft under $300.00 and possession of a hand gun. He pleaded guilty and received a 1–year suspended sentence and one year on probation. As a result, Gill's federal probation officer requested a parole violator warrant based on the convictions. The Parole Commission granted the request.

Thereafter, the Parole Commission commenced an investigation into several other, previously unreported arrests of petitioner while on parole. Three additional arrests by the Baltimore City Police were discovered: (i) "assault by cutting, aggravated" on March 13, 1985, (ii) possession of marijuana on April 5, 1986, and (iii) theft under $300.00, common assault and aggravated assault on November 26, 1986. With the exception of the possession of marijuana charge, the State of Maryland had dismissed the criminal charges against petitioner. Probation was imposed before judgment on the possession charge. None of these arrests were reported to the Parole Commission by either petitioner or the Baltimore City Police Department.

Based on the investigation, the Parole Commission issued a supplemental parole violator warrant on June 24, 1987. The warrant was executed and petitioner taken into custody on June 29, 1987. A parole revocation hearing was held on August 5, 1987. As a result, the examiner panel recommended that Gill's parole be revoked, that none of the time spent on parole be credited toward the service of his aggregated federal and District of Columbia sentence, and that he be required to continue service of the aggregated sentence to its expiration without parole. These recommendations were adopted by the Parole Commission on September 3, 1987. Petitioner's appeal to the National Appeals Board was unsuccessful.

## DISCUSSION

Gill's petition presents four claims for relief:

(1) that he was unlawfully required to serve the unexpired portion of his prior federal sentence as a result of his parole violation because the Commission illegally aggregated his federal and District of Columbia sentences;

(2) that the Parole Commission erroneously computed his presumptive parole date because it failed to treat his sentences as expiring independently;

(3) that the Parole Commission improperly applied its own guidelines to determine petitioner's parole eligibility instead of using the District of Columbia parole guidelines; and

(4) that his incarceration is unlawful because he failed to receive drug rehabilitation as recommended by the United States District Court for the District of Columbia following the revocation of his federal probation.

■ Petitioner's first claim is plainly without merit. It is well-established that criminal offenses committed in violation of the United States Code and the District of Columbia Code are federal offenses against the same sovereign and it is therefore appropriate to aggregate consecutive sentences for the purposes of determining parole eligibility. *Bryant v. Civiletti*, 663 F.2d 286, 289–90 (D.C.Cir.1981). Thus, when petitioner's parole was determined on September 19, 1980, the Parole Commission was required to determine parole eligibility based on an aggregate 14–year sentence consisting of the District of Columbia and federal violations, less any time already served. Ordinarily, prisoners on parole, who have unexpired sentences, receive credit for time spent on parole, typically called "street time." Where, however, as here, a prisoner commits a new criminal offense while on parole, the accumulated street time is forfeited. *See* D.C.Code

§ 24–206; *see also Bates v. Rivers,* 323 F.2d 311 (D.C.Cir.1963) (forfeiture of street time for D.C. inmates automatic after commission of new criminal offenses while on parole). For federal parole purposes, forfeiture of time spent on parole is discretionary if criminal offenses are committed but no conviction is achieved, 28 C.F.R. § 2.52(c)(1) (1987), and automatic if a conviction for a crime carrying a potential jail sentence is incurred. 28 C.F.R. § 2.52(c)(2); *D'Amato v. United States Parole Comm'n,* 837 F.2d 72, 77–78 (2d Cir. 1988); *Simmons v. United States Parole Comm'n,* 590 F.Supp. 1221 (D.D.C.1984). Similarly, probation violators are not entitled to credit for time spent on probation. *Hall v. Bostic,* 529 F.2d 990 (4th Cir.1975) (prisoner released on probation from state sentence not credited with time spent on probation after probation revoked); *United States v. Barnes,* 599 F.2d 1049 (4th Cir. 1979) (federal probationer not entitled to credit for time spent on probation after revocation). Unquestionably, therefore, the Parole Commission had the authority to aggregate the federal and District of Columbia sentences, to credit petitioner for time served, and to disallow credit for time spent on parole and probation. The resulting parole violator term of 9 years and 24 days calculated by the Bureau of Prisons is accordingly correct.[3]

■ Petitioner next contends that it was improper to require him to re-serve that portion of the federal sentence remaining after deductions for time spent on probation and on parole when his parole was revoked on June 24, 1987. Essentially, petitioner is asserting that his consecutive sentences expire independently of each other and that once he has accumulated enough prison time and street time to satisfy the first sentence, that sentence must be considered expired and a subsequent parole revocation should have no effect on that sentence. This claim, too, is meritless. "There is no authority for the proposition that consecutive sentences 'expire' independently of one another." *McCray v. United States Bd. of Parole,* 542 F.2d 558, 560 (10th Cir.1976). Consecutive sentences, particularly if they have been aggregated, are not to be separated simply because the time on one or more of them has been completed. *Id.* Simply put, consecutive sentences are considered to be one term. *Id.* The prisoner benefits from treating consecutive sentences as a single term because he receives the maximum rate of good time credit and therefore becomes eligible for an earlier mandatory release on parole. Succinctly stated, petitioner "is subject to serve the balance of the unexpired aggregated terms if he violates his parole at any time during that aggregated period." *United States v. Franklin,* 440 F.2d 1210, 1212 (7th Cir.1971). Petitioner's claim that the Parole Commission acted illegally when it required him to serve the unexpired portion of his federal sentence upon the revocation of parole is therefore wholly without legal foundation.

Gill's third complaint is that the Parole Commission should be required to apply the District of Columbia Parole Guidelines to determine his parole eligibility rather than those promulgated by the United States Parole Commission. Petitioner concedes that the Parole Commission has the authority to determine parole for prisoners housed in federal custody. He simply asserts that he should be considered a District of Columbia inmate because his most

---

**3.** Petitioner's 5–year federal probation term began October 7, 1977 and ran until April 4, 1979, when probation was revoked and petitioner returned to custody. A total of 18 months was credited against the sentence, leaving approximately 42 months remaining to be served on the federal sentence. On May 29, 1980, petitioner was sentenced to a total 9–year term in the District of Columbia. This sentence was ordered to run consecutively with the 42 months remaining on the federal term. This resulted in an aggregate 14–year sentence less time already served. Petitioner served 36 months of this sentence until his release on parole on June 9, 1983. Thus, a total of 54 months was credited against the aggregate sentence leaving 114 months or approximately 9 and one-half years remaining on the aggregate sentence. The time spent on parole from June 9, 1983 until revocation on September 3, 1987 was not credited against the total sentence. As of March 28, 1988, petitioner faced service of a 9–year and 24 day sentence, the amount calculated less miscellaneous days credited against the sentence.

recent convictions occurred in the District of Columbia.

In support, petitioner relies on *Thomas v. United States Parole Comm'n*, 672 F.Supp. 256 (E.D.Va.1987). There, Judge Clarke of this District held that a federal inmate convicted of violations of the District of Columbia Code was entitled to have his parole eligibility and suitability determined under District of Columbia standards. *Id.* at 258. Judge Clarke concluded that Congress intended that the same parole standards apply to a District of Columbia Code offender housed in federal prison as those applied to District of Columbia Code offenders housed in District of Columbia facilities. *Id.* Petitioner argues that *Thomas* is directly in point and dispositive. It appears, however, that there may be an important factual distinction. In *Thomas*, the petitioner was apparently a District of Columbia prisoner serving *only* District of Columbia sentences. Here, by contrast, the petitioner is serving both federal and District of Columbia sentences which have been aggregated. Contrary to petitioner's claim, it is not clear that he is a District of Columbia prisoner and therefore also not clear that *Thomas* is directly in point.[4]

In any event, the Court need not reach this issue because a substantially identical claim is being tested in a class action currently pending in the District Court for the District of Columbia. *Cosgrove v. Smith*, 697 F.2d 1125 (D.C.Cir.1983).[5] The class certified in *Cosgrove* consists of all male District of Columbia violators who are currently housed in federal prison facilities and who have been, or will be, reviewed for parole by the Parole Commission. As the respondents here correctly point out, the *Cosgrove* class was created under Rule 23(b)(3) of the Federal Rules of Civil Procedure and there is no right to opt out of such a class. *See Penson v. Terminal Transport Co.*, 634 F.2d 989, 994 (5th Cir. 1981).[6]

In view of the pending class action, the Court deems it appropriate to decline to take jurisdiction over the claim. Petitioner will be entitled to whatever relief is provided to District of Columbia violators in federal prisons by the *Cosgrove* court. His status as a class member does not rest on whether he is classified as a District of Columbia or federal prisoner; all that matters for class membership is that a petitioner (i) be a prisoner convicted of violating a District of Columbia law, (ii) be incarcerated in the federal system, and (iii) have been or will be reviewed for parole by the Parole Commission. Petitioner here clearly meets these criteria.

■ Petitioner's final claim is that his custody is somehow rendered illegal because of the failure of the Bureau of Prisons to comply with the recommendation stated in the judgment and commitment order following the revocation of petitioner's probation on April 4, 1979. That order recommended that petitioner be placed in a drug rehabilitation program. The short an-

---

4. If he is classified as a federal prisoner, then of course, the federal parole guidelines would apply. 18 U.S.C. §§ 4205–4218; 28 C.F.R. §§ 2.1–2.64 (1987). Only if he is in fact a District of Columbia prisoner does the question arise as to which guidelines apply.

5. It is worth noting that a related issue is currently pending before this court in *Moss v. Jeffrey Clark, Warden*, C.A. No. 88–0361–AM (E.D.Va. filed March 29, 1988). The *Moss* case presents the issue whether the Due Process and Equal Protection Clauses are violated by the failure to award District of Columbia prisoners incarcerated in federal prisons the good time credits available to District of Columbia prisoners incarcerated in District of Columbia prisons under the D.C. Good Time Credits Act of 1986. 24 D.C.Code § 428 *et seq.* Similarly, a class

action suit raising the identical claim as it relates to District of Columbia female prisoners incarcerated in federal prisons was recently filed in the United States District Court for the District of Columbia. *Jackson v. Edwin Meese, III, et al.*, C.A. No. 88–1403 (D.D.C. filed May 20, 1988).

6. The *Thomas* court determined this issue despite the pendency of the *Cosgrove* case because the prisoner there was immediately eligible for parole and deferral would have prejudiced his case. *See also Walker v. Luther*, 644 F.Supp. 76, 79 n. 8 (D.Conn.1986), *aff'd*, 830 F.2d 1208 (2d Cir.1987). This Court is not faced with a prisoner who, if District of Columbia guidelines were applied, would be immediately eligible for parole.

swer to this claim is that the order merely *recommended* treatment. It did not vest any fundamental rights in petitioner. Inmates have no constitutional right to any rehabilitation treatment or programs such as the drug program sought here. *Fredericks v. Huggins*, 711 F.2d 31 (4th Cir.1983); *Bowring v. Godwin*, 551 F.2d 44, 48 n. 2 (4th Cir.1977).[7] In *Fredericks*, the Fourth Circuit found that inmates enrolled in a methadone detoxification program prior to their incarceration did not retain a constitutionally protected interest in continuation of the program during pretrial detention or after incarceration. 711 F.2d at 34. Writing for a unanimous panel, Judge Murnaghan observed that:

> "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston*, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948). Even if the regulatory language does, in general, as applied to unincarcerated persons, create a constitutionally protected entitlement, the fact of confinement as well as the legitimate goals and policies of the penal institution limit such rights.

*Fredericks*, 711 F.2d at 34 (citation omitted). Thus, in the absence of any statutory entitlement to drug rehabilitation and in reliance on the *Fredericks* decision, petitioner's claim in this respect must be denied.

Still, the Court finds it lamentable that despite Gill's obvious problem with illegal drugs, he was apparently not afforded the opportunity to undergo drug counseling and rehabilitation. Significantly, the criminal violations for which petitioner's parole was revoked were all related to his desire to acquire either drugs or the money with which to purchase drugs. Similarly, his federal and District of Columbia convictions were also drug related. Given all this, the Court once again strongly recommends that petitioner be placed promptly in a drug rehabilitation program. Moreover,

the Court directs the United States Attorney, or his representative, to report to the Court within thirty (30) days of the date of this Memorandum Opinion regarding what steps have been taken to enroll petitioner in a drug rehabilitation program adequate to meet his needs. In the alternative, if no such steps have been taken, the report should explain fully why the petitioner has not been enrolled or why the Bureau of Prisons does not consider enrollment appropriate. Application to the Court for an extension of time may be made, if necessary. The Court retains jurisdiction to determine, if necessary, whether the explanation proffered by the Bureau of Prisons for not enrolling petitioner in drug rehabilitation is satisfactory.

The grant of this limited relief to petitioner in no way reflects upon the legality or illegality of petitioner's detention. On the contrary, the Court finds that the failure to provide drug treatment in the past does not render petitioner's confinement illegal, nor does it justify issuance of the requested writ of habeas corpus.

### CONCLUSION

A review of the pleadings and materials submitted by the parties compels the conclusion that petitioner is not entitled to relief. Petitioner's sentences were properly aggregated and his parole date correctly computed. Gill, as a member of the *Cosgrove* class, must await a final determination by the District Court for the District of Columbia concerning his claim that his parole must be determined under District of Columbia guidelines. Accordingly, the respondents' motion is granted and this action dismissed.

An appropriate order shall issue.

---

**7.** Nor is there any federal statutory right to such treatment. Some states, however, do provide for some modes of drug treatment for prisoners. *See Fredericks*, 711 F.2d at 34 n. 2.