Marline JACKSON, et al., Plaintiffs,

v.

Richard THORNBURGH, et al., Defendants.

Civ. A. No. 88–1403.

United States District Court, District of Columbia.

Dec. 13, 1988.

David W. DeBruin, Jenner & Block, Washington, D.C., for plaintiffs.

Frederick D. Cooke, Jr., Martin L. Grossman, Paul A. Quander, Jr., District of Columbia Corp. Counsel; Jay B. Stephens, U.S. Atty., John D. Bates, Bradley L. Kelly, Asst. U.S. Attys., for defendants.

## MEMORANDUM OPINION OF CHARLES R. RICHEY UNITED STATES DISTRICT JUDGE

CHARLES R. RICHEY, District Judge.

Overcrowding at the prisons of the District of Columbia, primarily at Lorton Reformatory, the District of Columbia's single maximum security prison, is a disaster rapidly becoming a disgrace. The problem has occupied this Court and others on dozens of occasions over several decades, and no end is presently in sight. For the time being, the government of the District of Columbia alone has the power to remedy the problem, but it must do so soon.

In a limited effort to alleviate the problem, the Council of the District of Columbia has passed the "District of Columbia Good Time Credits Act of 1986" (the "Act"). D.C.Code § 24–428, *et seq.* The Act authorizes the calculation of "good time" credits against the sentences of prisoners who have been convicted by courts of the District of Columbia and who are "imprisoned in a District correctional facility." Both on its face and as applied, the Act has no application to those prisoners convicted by a local court of the District of Columbia who are incarcerated in *federal* institutions.[1] The Act's net effect, in certain situations, is to reduce the minimum sentence that prisoners at District prisons must serve, and to perhaps cause them to be eligible for parole earlier than they might be otherwise. The Act is different from its federal good time counterpart, which reduces only a prisoner's *maximum* sentence and therefore has no effect upon a prisoner's eligibility for parole.[2]

The plaintiffs in this case are thirty females, convicted in local District courts, but who are housed in federal institutions around the country.[3] The defendants are the District of Columbia and various federal entities charged with supervising the federal penal system. As against the District, the plaintiffs challenge the constitu-

---

1. Under § 24–425 of the District of Columbia Code, all prisoners convicted in the District of Columbia of any offense are transferred to the custody of the Attorney General of the United States. The Attorney General then decides where the prisoner is to be incarcerated. For a thoughtful interpretation of the way in which this provision allocates responsibility for District offenders between the Attorney General and the District, and for an illuminating catalogue of the District's historical unwillingness to face its responsibility to provide even minimally adequate prison facilities, see the opinion of my colleague Judge Hogan in *United States v. District of Columbia,* —— F.Supp. —— C.A. No. 88–2897 (November 10, 1988).

2. Prior to 1986, the good time credit system for prisoners housed in District prisons was identical to the federal system.

3. There are a total of 30 plaintiffs. Twenty-nine of the plaintiffs, at the time of the filing of the complaint, were being held in the Federal Cor-

tionality of the Act under 42 U.S.C. § 1983 insofar as it limits the accrual of good time benefits to prisoners housed in "a District correctional facility." These plaintiffs allege that the Act's self-imposed geographical limitation denies their right to equal protection of the laws under the equal protection component of the Fifth Amendment's Due Process Clause. The plaintiffs also seek a writ of habeas corpus directing the federal defendants to retroactively compute and credit each with the good time credits to which they would have been entitled under the Act had they been housed in a District prison.

The parties have filed cross-motions for summary judgment and judgment on the pleadings. There appears to be no dispute over material facts, and the matter is ripe for a decision on the merits of the plaintiffs' claims. The Court holds that summary judgment shall be granted in favor of the defendants.

## DISCUSSION

■ The Act, in limiting its benefits to those prisoners housed in District prisons, does not violate the constitutional rights of prisoners housed elsewhere. As will be shown, the Act's distinction between prisoners assigned to serve their terms in District prisons and prisoners assigned to the federal system does not discriminate against a suspect class, does not infringe upon a fundamental right, and is "rationally related to a legitimate state interest," *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). Accordingly, the Act must be sustained.

Before elaborating on this holding, however, it is necessary to dispose of a preliminary issue raised in the plaintiffs' complaint. Plaintiffs' complaint, although not necessarily their subsequent briefing, seeks to characterize this action as one involving gender-based discrimination. The plaintiffs thus seek a standard of review more stringent than that permitted under the "rational basis" test; they seek equal protection review under the line of cases that evaluate gender-based distinctions pursuant to a more searching, "intermediate standard." *See, e.g., Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976).

The purported gender-based discrimination in this case arises from the fact that the District of Columbia maintains no facilities for housing women sentenced to prison terms exceeding one year. Accordingly, all women serving terms greater than one year, such as the plaintiffs, are required to be housed in federal prisons, and are for that reason necessarily unable to enjoy the benefits of the Act. The plaintiffs allege in their complaint that this system, operating in conjunction with the Act's geographical limitation, unconstitutionally isolates female prisoners such as themselves for disparate treatment.

However, this Court holds that the Act, whether viewed facially or as applied, does not create a disadvantaged class of female prisoners. Assuming, *arguendo*, that such a disadvantaged class exists, it has been created, not by the Act, but by the District's failure to provide facilities for women such as the plaintiffs, and relatedly, by the system of assigning certain prisoners to District prisons and certain prisoners to federal prisons. These factors, not the Act, have created the class of which the plaintiffs are members. The Act itself does nothing more than confer a benefit upon a discrete class, membership in which is formally unrelated to gender; other statutory mechanisms, not at issue here, work to exclude females sentenced to terms exceeding one year from membership in this discrete class.

Moreover, the purportedly disadvantaged class here contains considerable diversity; it includes many more potential plaintiffs than simply females sentenced to over one year. Males, sentenced to prison terms of all kinds, are also housed in federal prisons. Simply because a larger disadvan-

rectional Institution at Alderson, West Virginia. One was being held at the Federal Correctional

Institution at Pleasanton, California.

taged class perhaps *includes*, but is not limited to, a smaller group, it cannot be said that the defining statute discriminates against that smaller group. The existence of diversity in the allegedly disadvantaged class, undeniably present here, simply belies the presumption of discrimination which justifies heightened review, and which is at the heart of the protections of the Fifth and Fourteenth Amendments.[4]

Given that the Act does not define a class entitled to heightened review, it is therefore appropriate to evaluate the Act under the so called "rational basis" test.[5] Under this analysis, a legislative enactment will pass constitutional muster so long as it is rationally related to a legitimate state goal. *Lyng v. Castillo*, 477 U.S. 635, 106 S.Ct. 2727, 2730, 91 L.Ed.2d 527 (1986); *Hodel v. Indiana*, 452 U.S. 314, 331–32, 101 S.Ct. 2376, 2386–87, 69 L.Ed.2d 40 (1981); *McGinnis v. Royster*, 410 U.S. 263, 270, 93 S.Ct. 1055, 1059, 35 L.Ed.2d 282 (1973).

The principal motivating purpose behind the Act was, and is, to reduce the egregious overcrowding problem at the District's prisons. Although there is a dearth of legislative history regarding the Act, what little there is makes clear that overcrowding was the Act's principal focus. Indeed, the Committee that proposed the Act initially was created to avoid the appointment of a special master to address the overcrowding problem at the Lorton facility, a move first threatened by Judge June Green of this Court in *Twelve John Does v. District of Columbia*, C.A. No. 80–2136 (D.D.C.). Report, Council of the District of Columbia, at 2 (November 13, 1985). Further, the Council's Report opens its discussion of the Act's "Background and Need" by stating that the Act is one of several initiatives intended to address the District's "unprecedented overcrowding problem in its correctional institutions." *Id.* at 2. Although the scant legislative history does include references to goals other than population control, there can be no doubt that the reduction of overcrowding at Lorton and the District's jails was the moving force behind the Act's adoption. Further, there can be no question, and the plaintiffs do not dispute, that *reduction of prison overcrowding is a con-stitutionally legitimate*—and perhaps compelling—matter for the attention of the District Council. The issue for decision, then, is whether the Act's geographical limitation of its benefits to prisoners housed in District prisons is rationally related to the goal of reducing overcrowding at those institutions.

This Court finds without reservation that the Act is rationally related to this indisputably legitimate goal, and that the Act therefore does not violate principles of equal protection. The District Council bore no affirmative obligation to extend the benefits of the Act to *any* prisoner, and when it determined to do so, it had every right under the rational basis test to extend those benefits in such a manner as to address *only* the immediate problem at hand. *Plyler v. Doe*, 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982) ("A legislature must have substantial latitude to establish classifications that roughly approximate the nature of the problem perceived, that accommodate competing concerns both public and private, and that account for limitations on the practical ability of the State to remedy every ill."). The problem before the Council was overcrowding in its own prisons; there can be little question that the Act addresses that problem in a manner that is at once limited, yet sufficiently comprehensive to accomplish its ends. Were the Act to deny its benefits to any prisoner housed in an overcrowded prison within the District's jurisdiction, perhaps equal protection principles

---

4. In addition to the foregoing, there was uncontroverted evidence that many women sentenced to prison terms exceeding one year *are*, in fact, housed in the District of Columbia's city jail, where they are able to obtain the benefits of the Act.

5. Prisoners, as such, do not constitute a suspect class deserving of heightened scrutiny. *See Thornton v. Hunt*, 852 F.2d 526 (11th Cir.1988).

would be offended.[6] However, that is not the case here. In this Court's view the Act—a limited legislative response that is rationally related to a specific, discrete problem—does all that the Fifth Amendment requires.

The Court recognizes that this holding is in direct conflict with a very recent opinion of its counterpart in the Eastern District of Virginia. In *Moss v. Clark*, 698 F.Supp. 640 (E.D.Va.1988), Judge Ellis held that the Act's geographical limitation violates the Fifth Amendment's equal protection component as it applied to the plaintiff in that case, a male District offender housed at the Federal Correctional Institution at Petersburg, Virginia. In essence, Judge Ellis adopted the argument that the plaintiffs advance here: that the Act's exclusion of District offenders housed in federal prisons is unconstitutionally irrational, because to grant them the benefits of the Act would not have *hindered* accomplishment of the Act's principal objective—population control at the District's prisons. With all due respect to Judge Ellis, this Court declines to follow his reasoning on this question.

■ In this Court's view, such an approach places an impermissible burden on the District to extend benefits to persons outside the scope of the perceived problem. In a sense, *Moss* mandates that the Act—notwithstanding its clearly expressed objectives—be applied in an overinclusive fashion; *Moss* suggests that the benefits of the Act be extended even to those not involved with the specific malady against which the Act is targeted. However, this Court is more comfortable with the proposition that when a legislature acts to address a problem, and in so doing confers a benefit upon a discrete class, the rational basis analysis cannot, and does not, impose an obligation to confer that benefit upon all who might desire it. So long as the discrete class upon which the benefits have been conferred rationally reflects the nature of the problem—as is certainly the case here—the rational basis test has been satisfied. *See Bowen v. Owens*, 476 U.S. 340, 106 S.Ct. 1881, 1887, 90 L.Ed.2d 316 (1986) (in conferring benefits, Congress may "take one step a time, addressing itself to the phase of the problem which seems most acute to the legislative mind") (quoting *Williamson v. Lee Optical Co.*, 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955)). Even though conferral of the Act's benefits upon federal prisoners would not be inconsistent with the Act's objectives, to impose such an obligation would be, in this Court's view, inconsistent with the principle that the constitution never requires of a legislature that "things which are different in fact ... be treated in law as though they were the same." *Plyler*, 457 U.S. at 216, 102 S.Ct. at 2394. In this case, there is a rational basis for not granting the benefits of the Act to prisoners sentenced by the District's local courts but housed in federal institutions. Therefore, this Court respectfully declines to follow the decision in *Moss*.[7]

6. In their seminal equal protection article, Tussman & tenBroek make the point that a law clearly passes constitutional muster under the rational basis test so long as all of those affected by the law—those defined by the legislature as possessing the "trait"—are also all of those involved with the "mischief" against which the legislation is directed. Tussman & tenBroek, *The Equal Protection of the Laws*, 37 Cal.L.Rev. 341, 347–48 (1949). Here, under the Act, the "trait"—which, if possessed, triggers application of the Act—is residence in a District prison. The "mischief" against which the Act is principally directed is overcrowding in District prisons. Accordingly, it would seem that there is a clear congruence between the Act's reach and the nature of the real-world problem. The Act is therefore constitutionally sound, at least under Tussman and tenBroek's classic analysis. The result might be different if the legislative "trait" were somehow narrower than the mischief, as, for instance, if the Act applied only to prisoners in District prisons serving sentences in excess of five years.

7. Both the plaintiffs here and Judge Ellis in *Moss* have also consistently framed the Act's geographic limitation as involving a *denial* of the "rights" of prisoners sentenced by the District's local courts but housed in federal institutions to the benefits of the Act. However, the Court has difficulty seeing how these prisoners have been *denied* anything which they possess or are entitled to possess. The Act merely confers a form of special parole benefit upon prisoners housed in District prisons. It does not *deny* federal prisoners anything to which they are entitled. In any event, even if the Act did deny prisoners sentenced by local District of Columbia courts but housed in federal institu-

Because the Act does not isolate a suspect class for discriminatory treatment, does not infringe upon a fundamental right, and because the Act is rationally related to the legitimate, indeed compelling, goal of reducing the disgraceful overcrowding at the District of Columbia's prisons, it does not violate the equal protection component of the Due Process Clause of the Fifth Amendment. Accordingly, as there are no disputed issues of material fact, summary judgment in favor of the defendants in this action is proper. An appropriate order shall issue of even date herewith.

### ORDER

Upon consideration of the cross motions of the parties for judgment on the pleadings and for summary judgment, the oppositions thereto and after oral arguments thereon, it is, by the Court, for the reasons set forth in the opinion issued of even date herewith, this 13 day of December, 1988,

ORDERED, that summary judgment in this action shall be entered for the defendants, and the case shall stand dismissed from the dockets of this Court.

tions a form of parole benefit, it is well established that prisoners have no constitutional right to be considered for, or released on, parole. *Greenholtz v. Nebraska Penal Inmates,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979).