886 F.2d 686
 Lawrence MOSS, Petitioner-Appellee,
v.
Jeffrey J. CLARK, Respondent-Appellant,
Prisoners' Rights Program, Public Defender Service,
Washington, D.C.; Marline Jackson; Laverne Anderson;
Michele Anderson; Lillie Mae Bedney; Phyllis Clemons;
Barbara Davis; Sheila Davis; Cynthia L. Fogg; Rocina L.
Garmany; Edna Goolsby; Deborah Hagans; Vera Hardin;
Mavis Hobbs; Irene Jenkins; Shirley Y. Jones; Justine
Kinard; Pauline Massenberg; Deborah Morris; Patricia Ann
Paige; Jarita Reaves; Annie Robinson; Flossie Robinson;
Saundra Sanders; Rita Mae Scheer; Connie Smith-Johnson;
Ayesha Stackhouse; Mary Thomas; Sandra Walker; Tiajuana
Washington; Mary A. Wilson; Mona R. Wilson, Amici Curiae,
and
DC Correctional Department, Respondent.
John Michael BRAND, Jr., Petitioner-Appellee,
v.
Jeffrey J. CLARK, Respondent-Appellant,
Prisoners' Rights Program, Public Defender Service,
Washington, D.C.; Marline Jackson; Laverne Anderson;
Michele Anderson; Lillie Mae Bedney; Phyllis Clemons;
Barbara Davis; Sheila Davis; Cynthia L. Fogg; Rocina L.
Garmany; Edna Goolsby; Deborah Hagans; Vera Hardin;
Mavis Hobbs; Irene Jenkins; Shirley Y. Jones; Justine
Kinard; Pauline Massenberg; Deborah Morris; Patricia Ann
Paige; Jarita Reaves; Annie Robinson; Flossie Robinson;
Saundra Sanders; Rita Mae Scheer; Connie Smith-Johnson;
Ayesha Stackhouse; Mary Thomas; Sandra Walker; Tiajuana
Washington; Mary A. Wilson; Mona R. Wilson, Amici Curiae.
 Nos. 88-7828(L), 88-7832.
 United States Court of Appeals,
Fourth Circuit.
 Argued July 13, 1989.
Decided Sept. 28, 1989.
Rehearing and Rehearing In Banc Denied Nov. 13, 1989.
 
 Bradley Lynn Kelly, Asst. U.S. Atty. (Henry E. Hudson, U.S.Atty., Paula P. Newett, Asst. U.S. Atty., Jay B. Stephens, U.S. Atty., John D. Bates, Asst. U.S. Atty., R. Craig Lawrence, U.S. Atty. on brief) for respondent-appellant.
 Susan Beth Smith (John D. Grad, Grad, Toothman, Logan & Chabot, P.C., on brief) for petitioner-appellee.
 Robert C. Hauhart, Janet A. Vecchia, Prisoners' Rights Program, Public Defender Service, on brief, for amici curiae.
 David W. DeBruin, Theresa A. Chmara, Jenner & Block, on brief for amici curiae.
 Before ERVIN, Chief Judge, and PHILLIPS and WILKINSON, Circuit Judges.
 WILKINSON, Circuit Judge:
 
 
 1
 We review here the constitutionality of provisions of the District of Columbia Good Time Credits Act, D.C.Code Sec. 24-428, et seq., which limit District of Columbia good time credits to inmates in District of Columbia correctional facilities. Appellees claim that denying such credits to prisoners sentenced under District law yet housed in federal prisons violates their rights of equal protection and due process under the Fifth Amendment. The district court held the relevant provisions of the District of Columbia Good Time Credits Act unconstitutional. Moss v. Clark, 698 F.Supp. 640 (E.D.Va.1988).
 
 
 2
 We reverse.
 
 I.
 
 3
 On October 2, 1985, appellee Lawrence Moss was convicted in District of Columbia Superior Court of the D.C. offenses of burglary, assault, and theft. He was given a 9 to 30 year indeterminate sentence. On February 12, 1985, John Michael Brand, Jr. was also convicted in the District of Columbia of sodomy and assault with intent to rape. He was sentenced to 4 to 15 years imprisonment. Both Moss and Brand were remanded, pursuant to D.C.Code Sec. 24-425,[1] to the custody of the Attorney General of the United States, who placed them in a District of Columbia Department of Corrections facility. Due to severe overcrowding in District correctional facilities, appellees were promptly transferred to the authority of the Federal Bureau of Prisons where they have remained incarcerated. As a result of their transfer, appellees will receive good time credit according to the federal scheme and are no longer entitled to good time credits under the District of Columbia Good Time Credits Act ("Good Time Act"). By its terms the Good Time Act applies only to inmates housed in District of Columbia facilities. D.C.Code Sec. 24-428(a).[2]
 
 
 4
 The District and federal good time systems differ in significant respects. Under the federal good time system, the Bureau of Prisons applies good time credits to the prisoner's maximum sentence which moves the mandatory release date forward, but does not affect the minimum term required to be served before an inmate becomes eligible for parole. 18 U.S.C. Sec. 4161 (1982). Under the District scheme, good time credits are applied to reduce the minimum term of imprisonment, which determines the date of parole eligibility, as well as to reduce the maximum term of imprisonment, which determines mandatory release. D.C.Code Sec. 24-428(b).
 
 
 5
 Under the federal system, the Bureau of Prisons awards "good conduct" credits of five to ten days per month, based on the length of the sentence, to those prisoners who demonstrate good behavior. 18 U.S.C. Sec. 4161. The amount is not awarded automatically at the beginning of a sentence, but credited monthly as earned. Under the District system, an inmate incarcerated in a District correctional facility is automatically entitled to a maximum of 10 days institutional good time per month. D.C.Code Sec. 24-428(a). The credits cannot be revoked without a hearing. D.C.Code Sec. 24-432 (1989 Replacement Vol.). In addition to these automatic good conduct credits, extra good time credits are available under both systems, but with some variations. See, 18 U.S.C. Sec. 4162; 28 C.F.R. Secs. 523.1-523.17; D.C.Code Sec. 24-429 (1989 Replacement Vol.).[3] Although the parties disagreed over the exact number of days involved in available credits under the federal versus the District good time systems, the district court found a significant difference in the opportunity to reduce petitioners' sentences under the two schemes. For example, under the federal system, the earliest parole date for petitioner Moss would be April 1994. If awarded credits under the District scheme, Moss would face a parole eligibility date of either January 1991 or June 1992. Moss, 698 F.Supp. at 646.
 
 
 6
 In March and June of 1988, respectively, Moss and Brand filed petitions for writs of habeas corpus in the District Court for the Eastern District of Virginia alleging that they were entitled to the more generous credits of the District Good Time Act and that the computation of their credits under the federal system deprived them of equal protection and due process. The district court held the Good Time Act violative of equal protection to the extent that it created a distinction between D.C.Code offenders housed in District of Columbia correctional facilities and those housed in federal penal institutions. In the view of the district court, denying D.C. credits to the latter class bore no rational relationship to the governmental purpose of relieving overcrowding in District prisons. The court reasoned that the situs of incarceration was an irrelevant basis for distinguishing between D.C.Code offenders and that all inmates "should be subject to both the penalties and benefits, including good time credit, of the sovereign whose laws [they] violated." Moss, 698 F.Supp. at 642. This appeal followed.[4]
 
 II.
 
 7
 Moss claims that the District of Columbia Good Time Credits Act violates the equal protection component of the Fifth Amendment Due Process Clause because it awards differing good time credits to two classes of inmates convicted of District of Columbia Code offenses on the sole basis of their assignment to a District of Columbia or federal correctional facility. We disagree. The Act's classification of inmates based upon their situs of incarceration does not violate a fundamental right or involve a suspect class and is rationally related to a legitimate governmental interest in alleviating overcrowding in District of Columbia prisons. Thus the classification is permissible under the equal protection clause.
 
 
 8
 Laws are presumed to be constitutional under the equal protection clause, City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985), for the simple reason that classification is the very essence of the art of legislation. See also Massachusetts Bd. of Retirement v. Murgia, 427 U.S. 307, 314, 96 S.Ct. 2562, 3567, 49 L.Ed.2d 520 (1976). The legislature must be given latitude to grapple with the practical problems of governance; a court may not void "legislation which it simply deem[s] unwise or [i]nartfully drawn." United States R.R. Retirement Bd. v. Fritz, 449 U.S. 166, 175, 101 S.Ct. 453, 459, 66 L.Ed.2d 368 (1980). See also Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970). This deferential stance gives way to a rigorous standard of judicial review only when the classification involves a fundamental right or a suspect class.
 
 
 9
 No strict standard of review is implicated here. See McGinnis v. Royster, 410 U.S. 263, 270, 93 S.Ct. 1055, 1059, 35 L.Ed.2d 282 (1973). Prisoners are not a suspect class. See Thornton v. Hunt, 852 F.2d 526, 527 (llth Cir.1988). The status of incarceration is neither an immutable characteristic, Frontiero v. Richardson, 411 U.S. 677, 686, 93 S.Ct. 1764, 1770, 36 L.Ed.2d 583 (1973), nor an invidious basis of classification, Plyler v. Doe, 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982). Moreover, it would be ironic for the law to confer special solicitude upon a class whose members had violated it. See id. at 219 n. 19, 102 S.Ct. at 2396 n. 19 (illegal alienage not a suspect classification where "entry into the class is itself a crime"). Similarly, there is no fundamental right to parole or to release from a sentence of incarceration that has itself been lawfully imposed. See Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979); Wolff v. McDonnell, 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974). In the absence of infringement upon a fundamental right or a line drawn upon the basis of some suspect criterion, a relaxed standard of scrutiny applies.
 
 
 10
 A deferential standard of review is especially appropriate in this context. Here the legislative judgment involved balancing the need to alleviate prison overcrowding against the need to minimize risks to public safety inherent in any program of early release. Courts should not invade the province of the political branches by restriking that balance themselves. The only proper judicial inquiry is whether the statute serves a legitimate state interest and whether the challenged classification is rationally related to it. See McGinnis, 410 U.S. at 270, 93 S.Ct. at 1059.
 
 
 11
 It is undisputed that the goal of relieving overcrowding in District prisons is a legitimate one. Moss, 698 F.Supp. at 651. The District's scheme of good time credits is rationally related to that goal--undeniably, the reduction of mandatory maximum and minimum sentences serves to hasten the departure of inmates from its overburdened prison system. Moss, however, argues that the Good Time Act is irrational in that it applies only to D.C. offenders who are incarcerated in District prisons and not to D.C. offenders, such as himself, who were assigned to federal correctional facilities.
 
 
 12
 The Supreme Court, however, has rejected the argument that "good time" extended to one class of inmates within a jurisdiction must perforce be extended to all. In McGinnis v. Royster, 410 U.S. 263, 93 S.Ct. 1055, 35 L.Ed.2d 282 (1973), the Court considered an equal protection challenge to the award of good time credits on the basis of place of incarceration. In that case, New York law denied good time credit to state prisoners for any period of presentence incarceration in county jails. The Court upheld the denial because it was rationally related to the legitimate goal of rehabilitation of state prisoners. Since opportunities for rehabilitation were available to inmates in state prisons but not those in county jails, it was rational to distinguish between them for the purpose of awarding good time credit. Id. at 270-71, 93 S.Ct. at 1059-60. In McGinnis, as in this case, a claim of relative injustice was alleged. Inmates who were denied pretrial release protested the lack of good time credit for their full period of incarceration in contrast to inmates on bail who received such credit for the full time they spent in prison. The Supreme Court refused, however, to restructure the state program on a more utopian plane and deferred, as we do here, to the "rough" and "unscientific" judgments that legislators working in an imperfect world must make. Id. at 270, 93 S.Ct. at 1059, quoting Metropolis Theatre Co. v. City of Chicago, 228 U.S. 61, 69-70, 33 S.Ct. 441, 443, 57 L.Ed. 730 (1913).
 
 
 13
 Here the legislative judgment is clear. "The principal motivating purpose behind the [District of Columbia Good Time Credits] Act was, and is, to reduce the egregious overcrowding problem at the District's prisons." Jackson v. Thornburgh, 702 F.Supp. 9, 12 (D.D.C.1988). The Council of the District of Columbia specifically chose not to follow a recommendation that the proposed good time credits apply to District inmates in the federal system where overcrowding was not as severe as at Lorton Reformatory, the District of Columbia's single maximum security prison. See Council of the District of Columbia, Report by Committee on the Judiciary, November 12, 1986, at 5 (testimony of Elizabeth Symonds, American Civil Liberties Union of the National Capital Area). This was a rational choice for the Council to make. The goal of relieving overcrowding in the District system would not be substantially advanced by awarding inmates transferred to federal prisons District good time credit,[5] since they have been removed permanently from the District system.[6] The Act, therefore, sought to address the "problem [of overcrowding] in a manner that is at once limited, yet sufficiently comprehensive to accomplish its ends." Jackson, 702 F.Supp. at 12.
 
 
 14
 We reject appellees' contention that inmates incarcerated in District and federal facilities are in fact so similarly situated that different treatment of them defies rational explanation. The equal protection clause guarantees that "all persons similarly circumstanced shall be treated alike." Plyler, 457 U.S. at 216, 102 S.Ct. at 2394, quoting F.S. Royster Guano Co. v. Virginia, 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed. 989 (1920); City of Cleburne, 473 U.S. at 439, 105 S.Ct. at 3254. The equal protection clause does not, however, require "things which are different in fact or opinion to be treated in law as though they were the same." Plyler, 457 U.S. at 216, 102 S.Ct. at 2394, quoting Tigner v. Texas, 310 U.S. 141, 147, 60 S.Ct. 879, 882, 84 L.Ed. 1124 (1940). District of Columbia prisoners do not become similarly situated to prisoners in federal facilities with regard to parole eligibility simply because both were sentenced in the District of Columbia Superior Court under the District of Columbia Code. After sentencing, all individuals are remanded to the authority of the Attorney General who determines the location of their incarceration. Thereafter, for purposes of imprisonment and parole, "the class to which [an inmate] belongs consists of the persons confined as he was confined, subject to the same conditions to which he was subject." Koyce v. United States Bd. of Parole, 306 F.2d 759, 762 (D.C.Cir.1962). See also Bates v. Wilkinson, 267 F.2d 779 (5th Cir.1959) (military prisoners in federal prison not denied equal protection when subject to laws pertaining to other federal prisoners). As a practical matter, there may be a real difference between imprisonment in a federal prison and imprisonment in a District facility. The unprecedented overcrowding which plagues District prisons, most especially Lorton Reformatory, and which triggered the enactment of D.C.Code Sec. 24-428, may in itself underscore that difference--a difference that supports the rationality of extending generous good time credits to D.C. inmates alone.
 
 
 15
 The District of Columbia Good Time Act is rationally grounded in other ways. Preserving uniform treatment of inmates who are incarcerated together, in an effort to maintain morale and efficient prison administration, serves as an additional justification for the challenged classification. It is rational to conclude that "it would be deleterious to prisoner morale, discipline, and rehabilitation if persons confined within the same prison, perhaps within the same cell, were subject to different standards for release on parole." Cosgrove v. Smith, 697 F.2d 1125, 1144 (D.C.Cir.1983) (Bork, J., concurring in part and dissenting in part). See also, Johnson v. Barry, 815 F.2d 1119, 1121 (7th Cir.1987) (inmate transferred from District to federal prison may be deprived of more lenient District disciplinary rules because it is rational to discipline prisoners in a given facility according to uniform standards). Indeed, the Federal Bureau of Prisons represented that requiring it to maintain two different good time schemes, one for District prisoners and one for all other prisoners, would create conflicts between inmates and would be administratively burdensome. Moreover, the maintenance of a separate good time scheme for D.C.Code offenders housed in federal facilities would play particular havoc with the parole eligibility dates of a sizeable number of inmates in federal facilities who have committed both D.C. and federal offenses. Under Chatman-Bey v. Meese, 797 F.2d 987 (D.C.Cir.1986), aff'd on rehearing, 864 F.2d 804, 814 (D.C.Cir.1988), their separate sentences must be aggregated for purposes of calculating the parole eligibility dates of such prisoners. Under the district court holding, however, the federal and D.C. sentences must be de-aggregated so that the separate good time formulas may be applied to the minimum and/or maximum sentence terms of each sentence. Once de-aggregated, the very purpose of aggregation--that of computing a uniform parole eligibility date--has been defeated, and compliance with Chatman-Bey would be difficult.
 
 
 16
 Finally, we reject the district court's conclusion that the Good Time Act was not rationally related to its stated purpose because the District could have accomplished the same goal without denying good time benefits to appellees. That is tantamount to a declaration that when a legislature acts, it must do so overinclusively. The law of equal protection has never hamstrung legislative bodies to such an extent. If it did, governmental benefits could seldom be granted selectively, because the line of would-be beneficiaries who claim to be similarly circumstanced to actual beneficiaries would be long. A legislature must have the ability to address a complex problem by taking "one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind." Bowen v. Owens, 476 U.S. 340, 347, 106 S.Ct. 1881, 1889, 90 L.Ed.2d 316 (1986), quoting Williamson v. Lee Optical Co., 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955). The legislature's decision not to award earlier dates of parole eligibility to those in different rehabilitation programs and living under different prison conditions, when it would not address the problem of prison overcrowding, is far from the type of irrational distinction that the equal protection clause condemns. The question for this court is not whether the District Council could have accomplished its legitimate purpose of reducing prison overcrowding without limiting good time benefits to District inmates. The fact that some alternative means of attacking a problem suggests itself to courts is immaterial where the legislative judgment is a rational one, as this one is.
 
 III.
 
 17
 Appellees also claim that the District of Columbia Good Time Credits Act violates their rights under the Due Process Clause of the Fifth Amendment. We disagree. First, appellees can claim no lack of procedural due process because the Good Time Credits Act conferred no protectible liberty interest on Moss and Brand upon their assignment to federal facilities, a matter which is itself plainly left to the discretion of the Attorney General under D.C.Code Sec. 24-425. We thus reject appellees' claim to an entitlement under a statute which does not apply to them as federal prisoners. Nor is their claim of a substantive due process violation any more persuasive. As in equal protection analysis, substantive due process requires only that legislation be rationally related to a legitimate end of government. National R.R. Passenger, Co. v. Atchison, Topeka and Santa Fey Ry. Co., 470 U.S. 451, 476-77, 105 S.Ct. 1441, 1457-58, 84 L.Ed.2d 432 (1985); Exxon v. Governor of Md., 437 U.S. 117, 124-25, 98 S.Ct. 2207, 2213-14, 57 L.Ed.2d 91 (1978). For the reasons stated in Section II, supra, we hold that the District of Columbia Good Time Credits Act is rationally related to a legitimate governmental purpose and thus constitutional under the Due Process Clause.
 
 
 18
 Finding no constitutional infirmity in the denial of credits to appellees under the District of Columbia Good Time Credits Act, we reverse the judgment of the district court.
 
 
 19
 REVERSED.
 
 
 
 [1]
 D.C.Code Sec. 24-425 (1989 Replacement Vol.) provides in relevant part:
 [t]he Attorney General may designate [as the place of incarceration] any available, suitable, and appropriate institutions, whether maintained by the District of Columbia government, the federal government, or otherwise, or whether within or without the District of Columbia. The Attorney General is also authorized to order the transfer of any such person from one institution to another if, in his judgment, it shall be for the well-being of the prisoner or relieve overcrowding or unhealthful conditions in the institution where such prisoner is confined, or for other reasons.
 
 
 [2]
 D.C.Code Sec. 24-428(a) (1989 Replacement Vol.) states:
 Every person who is convicted of a violation of a District of Columbia ("District") criminal law by a court in the District of Columbia, imprisoned in a District correctional facility, and whose conduct is in conformity with all applicable institutional rules is entitled to institutional good time credits in accordance with the provisions of this section.
 
 
 [3]
 The federal good time statute described in this opinion, 18 U.S.C. Sec. 4161 et seq., was repealed on November 1, 1987. These code sections remain in effect for five years from the date of repeal for individuals, like Moss and Brand, who committed offenses prior to November 1, 1987. After November 1, 1992, the computation of sentences for petitioners may be controlled by the superseding Federal Good Time Act, found in the Sentencing Reform Act of 1984, 18 U.S.C. Sec. 3624 (1986 Supp.), which eliminates most types of extra good time
 
 
 [4]
 We reject appellees' assertion that the federal government is not a party in interest for purposes of this appeal. The judgment of the district court left the government both potentially liable for attorneys' fees and under court order to recompute the terms of confinement for those in federal correctional facilities. The judgment of the trial court was obviously adverse to the government and we decline appellees' invitation to dismiss its appeal
 
 
 [5]
 Appellees' contention that maintaining a federally incarcerated inmate under the District good time scheme would further the purposes of the Act by freeing space for District prisoners was contradicted by testimony before the district court. The Federal Bureau of Prisons is under no continuing obligation to accept new District prisoners to replace outgoing ones
 
 
 [6]
 Conversely, District inmates who are transferred on a contract basis to prisons in other states remain under the District good time system because they effectively remain District prisoners and will return to the District system before release