Jennifer Hill WEST, Plaintiff,

v.

**VIRGINIA DEPARTMENT OF CORRECTIONS, Defendants.**

Civ. A. No. 92–0887–R.

United States District Court, W.D. Virginia, Roanoke Division.

March 29, 1994.

Deborah C. Wyatt, Wyatt & Carter, Charlottesville, VA, for plaintiff.

Pamela A. Sargent, Asst. Atty. Gen., Richmond, VA, for defendants.

## MEMORANDUM OPINION

CONRAD, United States Magistrate Judge.

Plaintiff Jennifer Hill West has filed this civil action pursuant to 42 U.S.C. § 1983, with jurisdiction vested pursuant to 28 U.S.C. § 1343. In her complaint, plaintiff alleges that she is the victim of gender-based discrimination because she has not been allowed to participate in the Boot Camp Incarceration Program [BCIP], established pursuant to § 53.1–67.1 of the Code of Virginia (1950), as amended. Plaintiff names as defendants the Virginia Department of Corrections [VDOC], Edward W. Murray (the Director of the VDOC), the State Board of Corrections [State Board], and nine members of the State Board. Plaintiff seeks monetary damages, costs and attorney's fees, and declaratory and injunctive relief. The case is before the undersigned United States Magistrate Judge pursuant to the consent of the

parties entered under the authority of 28 U.S.C. § 636(c).

On February 28, 1994, a hearing was held on the parties' cross-motions for summary judgment.[1] At the hearing, the parties stipulated that the material facts in this case are undisputed and that the matter is ready to be decided on the merits. The undisputed material facts are as follows.

### Factual Background

In 1990, the Virginia General Assembly enacted the Boot Camp Incarceration Program [BCIP], which became effective on January 1, 1991. *See* Va.Code § 53.1–67.1. Virginia Code § 19.2–316.1 (1950) sets forth the criteria for eligibility of individuals requesting admission into the BCIP.[2] None of these criteria requires that the applicant be male. However, since its inception, the program has been open only to male applicants. Those who enter the BCIP spend approximately 90 days at the program followed by at least one year of probation, generally in place of significantly longer sentences.[3] Those who are not able to enter the program, including all women, are subject to longer sentences of incarceration and parole.[4]

Plaintiff, a female over the age of 18, is a Virginia resident who entered a guilty plea to a felony charge of possession of cocaine with intent to distribute in the Circuit Court of Charlottesville on March 2, 1992. Although she met the qualifications for BCIP set forth in § 19.2–316.1 at the time of her sentencing, plaintiff filed a motion to participate in the Community Diversion Incentive Program [CDI] in lieu of serving time. One stated reason for this motion was that there was no female boot camp program in Virginia in which she could participate. However, the sentencing judge denied plaintiff's motion and, instead, sentenced her to nine years in prison with three years suspended plus six additional years on probation. Pursuant to the judge's order, plaintiff was incarcerated at the Virginia Correctional Center for Women in Goochland, Virginia until June 2, 1993, when she was released on parole.

In filing this action, plaintiff does not contend that the statute itself is unconstitutional inasmuch as it is clearly gender neutral. Instead, plaintiff maintains that in implementing the statute, the DOC has acted in an unconstitutional fashion in establishing a boot camp program for men and not for women, thereby foreclosing the availability of the statute's favorable sentencing provisions for female offenders.

### Law

The equal protection clause of the Fourteenth Amendment provides that "No State shall ... deny to any person within its jurisdiction the equal protection of the laws." Although this clause has been held not to deny the power of states to treat different classes of persons in different ways, *Reed v. Reed*, 404 U.S. 71, 75, 92 S.Ct. 251, 253, 30 L.Ed.2d 225 (1971), when a regulation undertakes to define a class, the criteria for defin-

---

1. At the hearing, the parties' other pending motions were also addressed.

2. Currently, an individual may be eligible to participate if the individual: (1) is convicted on or after January 1, 1991, of a nonviolent felony or is deemed by the court to be nonviolent in character; (2) is no older than 24 at the time of conviction for the offense; (3) has never before been incarcerated in a state correctional facility; and (4) has not been confined for more than twelve months nor for more than one term of confinement in a local correctional facility. Confinement for misdemeanor traffic convictions are not considered in determining eligibility. *See* Va. Code § 19.2–316.1.

3. The key elements of the boot camp program include military drill and ceremony, physical training, manual labor, academic education, vocational assessment, drug abuse education and life skills training.

4. In the pleadings, plaintiff produced evidence of a real couple whose sentencing was illustrative of this disparity. In that case, the couple were charged at the same time with the same offense, in the same court, before the same judge, and were prosecuted by the same prosecutor. Counsel for both defendants requested assignment to BCIP. Due to the unavailability of Boot Camp for women, the judge sentenced the woman to the next best thing: twenty years in the Community Diversion Incentive Program [CDIP]. However, the same judge sentenced the boyfriend to BCIP. Assuming the boyfriend successfully completed the program and the one year probation, he has now completed his sentence—over eighteen years earlier than his girlfriend.

ing the class must be related to the purpose of the regulation. *Id.* at 76, 92 S.Ct. at 253–54. This principle protects against class-based discrimination by requiring varying levels of governmental justification for classification among people. *See generally United States v. Virginia* ("*V.M.I.*"), 976 F.2d 890 (4th Cir.1992), *cert. denied sub nom., Virginia Military Institute v. United States,* 113 S.Ct. 2431, 124 L.Ed.2d 651 (1993).

While discrimination on the basis of race or national origin is subject to "strict scrutiny," *Faulkner v. Jones,* 10 F.3d 226, 231 (4th Cir.1993), classifications based on economic factors or non-suspect classifications are subject to the rational basis standard of review. *Id.* On the other hand, sex-based classifications, even in the context of unequal prison conditions, are given "intermediate" scrutiny. *Id.; Bukhari v. Hutto,* 487 F.Supp. 1162, 1171 (E.D.Va.1980). "To withstand intermediate scrutiny, a statutory classification must be substantially related to an important governmental objective." *Id., citing Clark v. Jeter,* 486 U.S. 456, 461, 108 S.Ct. 1910, 1914, 100 L.Ed.2d 465 (1988); *Mississippi Univ. for Women v. Hogan,* 458 U.S. 718, 724, 102 S.Ct. 3331, 3334, 73 L.Ed.2d 1090 (1982). "Legislative distinctions based on gender may thus be justified by an important governmental interest in recognizing demonstrated differences between males and females. But intermediate scrutiny will reject regulations based on stereotypical and generalized conceptions about the differences between males and females." *Faulkner,* at 231; *see Hogan,* 458 U.S. at 724–25, 102 S.Ct. at 3337 (unconstitutional to base classifications on "traditional, often inaccurate, assumptions about the proper roles of men and women"); *Frontiero v. Richardson,* 411 U.S. 677, 684–85, 93 S.Ct. 1764, 1769–70, 36 L.Ed.2d 583 (1973).[5]

In *V.M.I.,* the Fourth Circuit addressed the problem of whether an historically all-male state-supported military college could remain single-sex. The Court held that the state adequately demonstrated relevant physical and psychological differences between the sexes and a justification for single-sex education. 976 F.2d at 897. Accordingly, V.M.I. could remain single-sex. *Id.* However, the Court "could find no state policy justifying Virginia's decision to offer this unique type of education only to men." *Id.* at 899. The Court stressed that no evidence was presented that women might not also benefit from the program offered at V.M.I. Instead, the only asserted justification for offering the program solely to men was diversity. The Court concluded, however, that "a policy of diversity is not advanced by the establishment of an institution for only one gender." *Id.* Therefore, the Court remanded the case to the district court in order to develop a plan which would comply with the Fourteenth Amendment. *Id.*

In contrast to the situation presented in *V.M.I.,* the *Faulkner* decision held that where a gender classification is not justified by any acknowledged difference between men and women, then even "separate but equal" facilities will not be sufficient. *Faulkner,* at 232. In *Faulkner,* the defendants attempted to justify an all-male military college on the ground that certain values were embodied in and promoted at the Citadel. However, in contrast to *V.M.I.,* none of the asserted grounds was connected with any male-only characteristic. Therefore, "separate but equal" was not warranted. Even had it been, the Court noted, there was no explanation for the failure to offer women the same opportunity to participate in a single-gender institute as that afforded to men. *Id.,* at 232. The Court concluded by holding that the district court did not abuse its discretion in issuing a preliminary injunction enabling the admission of a female student to the Citadel.

### Analysis

In this case, defendants contend that the appropriate level of scrutiny is rational basis

---

5. For example, separate men's and women's bathrooms are warranted because of the recognized differences between men and women, *Faulkner,* at 232, but all-female nursing schools are not warranted because they are based on traditional assumptions about the proper roles of men and women. *See Hogan, supra; see also Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976) (unconstitutional to permit women to buy beer at younger age than men); *Reed v. Reed, supra* (unconstitutional to prefer men to women as administrators of estates).

because there is neither a fundamental right nor a suspect class at issue. Instead, defendants contend that the "appropriate class to which an inmate belongs consists of the persons confined subject to the same conditions." Defendant's Motion for Summary Judgment, citing Moss v. Clark, 886 F.2d 686, 690 (4th Cir.1989). Accordingly, defendants argue that the class to which plaintiff belongs includes all female inmates, because the conditions of incarceration for female inmates "differ significantly from the prison conditions for their male counterparts." See Defendants' Brief. Applying the rational basis standard, the defendants argue that a five-year trial boot camp program which is open only to men is rationally related to the legitimate governmental interest of addressing the difficult problems of prison overcrowding and recidivism step-by-step without wasting limited governmental resources. The court cannot accept the defendants' argument.

■ First, defendants start with the wrong standard of review. Defendants rely on Moss v. Clark for the proposition that the rational basis standard of review is the appropriate standard to use when assessing regulations which apply to prisoners. However, Moss is inapposite. In Moss, a prisoner convicted of a District of Columbia offense and incarcerated in a federal prison challenged the constitutionality of the District of Columbia Good Time Credits Act, which gave inmates convicted of D.C. crimes housed in D.C. prisons time off their minimum sentences but did not apply to those convicted of D.C. crimes housed in federal prisons. 886 F.2d at 688. The Fourth Circuit, applying the rational basis standard of review, upheld the law.

It is clear that the class defined in Moss was "all inmates convicted of D.C. crimes housed in federal prisons." This class does not attempt to differentiate between prisoners on the basis of race, sex, alienage or national origin. Therefore, the class is neither a suspect class (race, national origin or alienage), nor a class which is subject to intermediate scrutiny (gender), and the rational basis test was properly applied. In this case, however, the distinction is clearly drawn between male inmates and female inmates: male inmates are eligible for BCIP and the favorable sentencing provisions associated therewith, female inmates are not. Therefore, the rational basis standard is clearly inapplicable to this case and the intermediate scrutiny test must be applied. See Bukhari, 487 F.Supp. at 1171 (applying intermediate scrutiny in case involving differences between men's and women's prisons).

"Intermediate scrutiny" requires that legislation based on gender be "substantially related to an important governmental objective." Faulkner, at 231; see Hogan, 458 U.S. at 724, 102 S.Ct. at 3336. As discussed supra, the defendants start from the wrong premise: that the rational basis standard should be applied. However, the reasons asserted by the defendants in support of their contention that the boot camp program is constitutional must be considered in assessing the constitutionality of the program under the intermediate scrutiny test.

■ Defendants claim that the pilot boot camp program was established to "address the problems of increasing overcrowding and recidivism." Defendants argue that the boot camp program was established only in the men's prisons because the two asserted objectives of prison overcrowding and recidivism are most pressing in the men's prisons [6] and because the government's limited resources required allocation to only one facility while the program was being assessed.[7]

---

6. Citing Bowen v. Owens, 476 U.S. 340, 347, 106 S.Ct. 1881, 1886, 90 L.Ed.2d 316 (1986), the defendants argue that "in addressing complex problems a legislature 'may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind.'" However, Bowen applies the rational basis test to uphold a classification between types of widowed spouses eligible to receive benefits under the Social Security Act. Id. at 341, 106 S.Ct. at 1883. None of the classifications at issue in Bowen dealt with a suspect or quasi-suspect class and, therefore, the rational basis test was properly applied. As discussed supra, however, the intermediate scrutiny test is the proper test to apply in this case. Therefore, the legislature's decision in this case is not entitled to such deference. See Hogan, supra.

7. The defendants' monetary justification for this classification will be addressed infra.

Although the court finds the defendants' asserted objectives to be constitutionally adequate, the court also finds that the decision to provide the pilot BCIP solely to men is not substantially related to these objectives. *See Hogan,* 458 U.S. at 726, 102 S.Ct. at 3337.

First, defendants admit that they intended to use the results of the BCIP program to assess its viability before extending the program to women. However, there is no evidence that the results of an all-male boot camp program would be anywhere comparable to the results of a boot camp program comprised of all women or one comprised of both sexes. In fact, it is arguable that the program for men could produce unfavorable results, while a program for women could be completely successful. Nevertheless, it is undisputed that if the results of the all-male BCIP are unfavorable (*i.e.,* fail to mitigate the problems of overcrowding and recidivism), women will never get the chance to enter boot camp and receive the attendant favorable sentencing alternative because the program will be discontinued. *See* Virginia House Doc. No. 9, 1990. Therefore, the defendants' decision to establish an all-male experimental boot camp program is not substantially related to addressing the problems of prison overcrowding and recidivism in female prisons.

■ Second, defendants argue that the decision to establish a pilot boot camp program only in a men's prison was justified because of the Commonwealth's limited resources. Defendants also argue that the decision where and how to allocate limited resources is entitled to judicial deference, because "without a certain latitude to address social problems as it sees fit, a legislature would be fettered and unable to experiment before launching a comprehensive program that had not demonstrated its potential for success." [8] This argument is similar to that presented in *Bukhari v. Hutto, supra.*

In *Bukhari,* the plaintiff argued that her conditions of confinement in an all-female prison were inferior to those of male inmates in an all-male institution. The court empathized with the "defendants who must deal with the fiscal reality that providing for a wide range of programs for a smaller number of prisoners entails a greater cost." *Id.* at 1172. However, the court held that "such seemingly practical considerations may not be used to 'justify official inaction or legislative unwillingness to operate a prison system in a constitutional manner.'" *Id.; see Califano,* 430 U.S. at 217, 97 S.Ct. at 1032 (savings in time, money and effort do not justify gender-based discrimination). Similarly, the defendants in this case cannot provide programs and favorable sentencing to male inmates solely on the basis that the problems are more pressing in male prisons and it is more cost-effective to address those problems. *Bukhari, supra; Califano, supra.* If defendants' argument were carried to its logical extension, then the same argument could be used to deny women inmates the opportunity for education, vocational training or rehabilitation. Surely such an inequitable distribution of resources is not contemplated by the Fourteenth Amendment. *See Bukhari, supra.* Therefore, the court finds the defendants' argument to be without merit.

■ Finally, and most importantly, even if there were differences which justified treating male and female inmates differently, the

8. In support of this contention, defendants cite *Plyler v. Doe,* 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982). *Plyler* held that "[a] legislature must have substantial latitude to establish classifications that roughly approximate the nature of the problem perceived, that accommodate competing concerns both public and private, and that account for limitations on the practical ability of the State to remedy every ill." *Id.* at 216, 102 S.Ct. at 2394. However, in the next paragraph, the Court also held that "we would not be faithful to our obligations under the Fourteenth Amendment if we applied so deferential a standard to every classification." *Id.* at 216, 102 S.Ct. at 2394. For example, in cases involving a suspect class or a fundamental right, higher levels of scrutiny should be applied. *Id.* Therefore, it is clear that the deferential standard cited by defendants to justify the provision of the BCIP and the attendant favorable sentencing alternatives only applies to cases warranting the rational basis standard of review. Since this case involves a quasi-suspect class, the appropriate standard is intermediate scrutiny and the legislature's determination to provide the BCIP and the favorable sentencing alternatives only to male inmates may not be justified on the basis of economic or administrative savings. *See Califano v. Goldfarb,* 430 U.S. 199, 217, 97 S.Ct. 1021, 1032, 51 L.Ed.2d 270 (1977).

court finds that there was no compelling interest in providing male and female offenders with such unequal sentencing options. The question of gender parity in the prison context was addressed in *Bukhari, supra.* In that case, the district court noted that "[a] determination of parity will involve a review of the totality of prison conditions and rehabilitative opportunities at male prisons and at [female prisons]." While the court did not mandate that the prison facilities and programs be equal, the court made clear that "[d]ifferences unrelated to such valid concerns as prison security must be remedied." *Id.,* 487 F.Supp. at 1172.

In this case, the defendants stress the "acknowledged differences" between men and women in support of the contention that identical facilities and programs are not mandated. Rather, defendants argue, "the nature of the difference dictates the type of facility permissible for each gender." Defendants' Brief, citing *Faulkner,* at 232. However, defendants further contend that its decision to provide the boot camp program only to males was not a result of "archaic and stereotypic notions of gender," nor was its exclusion of women from the program for invidious purposes. Instead, defendants argue that, pending favorable results from the pilot BCIP, the boot camp program would be extended to women at Goochland. The court finds these arguments to be contradictory and without merit.

First, defendants do not even attempt to address what "acknowledged differences" would justify the provision of a boot camp program and favorable sentencing alternatives only to men. Without such an assertion, the court has two alternatives: it can conclude that there are no "acknowledged differences" which would justify non-identical facilities or programs or it can deduce that defendants believed the differences to be so obvious they were not worth mentioning. If there are no "acknowledged differences," then the defendants were clearly unjustified in failing to provide identical facilities and programs for women. *See Faulkner, supra.* If it is the latter case, then the defendants must have been acting on the basis of "archaic and stereotypic notions" of the roles of men and women, because the court can find no manifest difference which would justify the provision of boot camps and favorable sentencing alternatives only to male inmates. *See Id.; Hogan,* 458 U.S. at 725, 102 S.Ct. at 3336–37. Either way, the defendants' failure to open the BCIP to women and provide them with the same favorable sentencing alternatives was unconstitutional. *See Bukhari, supra.*

Moreover, there is an inherent contradiction in the defendants' argument. On the one hand, defendants argue that the "acknowledged differences" between men and women justify the provision of a trial boot camp program for male inmates. On the other hand, defendants purport to want to use the results of the all-male BCIP to determine whether the program should be extended to women. The court finds that either the all-male program is justified by the "acknowledged differences" between men and women *or* the results of the all-male program cannot be used to assess the viability of the boot camp program for women. Because defendants have failed to prove that either justification applies in this case, the court finds that the defendants acted unconstitutionally in providing a favorable sentencing option for male prisoners, where none was available for female prisoners.

The court understands that prison administrators are usually accorded great deference in establishing rehabilitation programs within a prison system. *See Bell v. Wolfish,* 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1970); *see also Block v. Rutherford,* 468 U.S. 576, 104 S.Ct. 3227, 82 L.Ed.2d 438 (1984). In this vein, the court agrees that whether this grant of discretionary authority could permit the DOC to establish a boot camp-type program for men and not for women presents a close question. However, when an extremely favorable sentencing alternative is provided to one class of inmates and not another, and when that classification is based solely on the inmates' gender, the line is crossed.

For the foregoing reasons, the plaintiff's motion for summary judgment will be grant-

ed and the defendants' motion for summary judgment will be denied.