**Shelby L. COUNTS, Plaintiff,**

v.

**John R. NEWHART, Sheriff, and Ron Angelone, Virginia Dep't of Corrections, Defendants.**

**Civil Action No. 2:96cv101.**

United States District Court, E.D. Virginia, Norfolk Division.

Nov. 5, 1996.

Shelby L. Counts, pro se.

Samuel L. Dumville, Virginia Beach, VA, for John Newhart.

Lance B. Leggitt, Attorney General's Office, Richmond, VA, for Ron Angelone.

## OPINION AND ORDER

CLARKE, District Judge.

Plaintiff, a Virginia inmate, brings this *pro se* action pursuant to 42 U.S.C. Section 1983 to redress alleged violations of his constitutional rights. Plaintiff seeks monetary relief.[1] This matter comes before this Court on defendant Ron Angelone's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and defendant John R. Newhart's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or in the alternative for summary judgment under Federal Rule of Civil Procedure 56. In accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir.1975), plaintiff was given an opportunity to respond to the motions by the defendants with any material that he wished to offer in rebuttal. For the reasons stated below, defendant Angelone's motion to dismiss is GRANTED and defendant Newhart's motion for summary judgment is GRANTED.

## I. BACKGROUND

Plaintiff Shelby Counts is a Virginia inmate currently housed in a state correctional facility in Troutville, Virginia. Prior to that, Counts was housed in the Chesapeake City Jail awaiting transfer to a state institution.

---

1. The Court notes that plaintiff also had sought a transfer from the Chesapeake City Jail to a Virginia state penitentiary. Since filing this action, such a transfer has taken place. Plaintiff's request for a transfer order is therefore moot. Plaintiff's only remaining claim is for monetary damages. *See* Court's Order dated June 5, 1996.

In his original complaint, plaintiff also sought an injunction ordering the defendants to relieve overcrowding in the Chesapeake City Jail by transferring some inmates to other local institutions and all state prisoners into the custody of the VDOC; the empaneling of a grand jury to inquire into possible violations of local, state, and federal laws; inspections of the jail for possible health violations; and an order requiring the defendants to rigidly follow all health- and corrections-related regulations. Plaintiff did not list these requests in the questionnaire he filled out at the Court's request and which is considered as an amended complaint. Because the plaintiff did not press these requests, the Court deems these requests as abandoned and will only address this claim as a suit for monetary damages.

Counts brings this civil rights action under 42 U.S.C. Section 1983 challenging the conditions at the Chesapeake City Jail and the failure of the Virginia Department of Corrections ("VDOC") to transfer him to a state institution within the time frame specified under Virginia law.

Counts' conditions claim is directed at defendant John Newhart, Sheriff of the City of Chesapeake, Virginia. Counts alleges that Sheriff Newhart violated his constitutional rights because of inadequate conditions at the Chesapeake City Jail, the maintenance of an inadequate law library, and interference with the plaintiff's practice of religion.

According to Counts, the cell block in which he was housed was designed to hold ten inmates but regularly held twenty-seven to twenty-nine inmates. This cell block consisted of five cells and a day-room. Each cell, designed to hold two inmates, held three inmates, two sleeping in bunk beds and one sleeping on a mattress on the floor. The remaining inmates slept on mattresses on the floor of the day-room. Overall, Counts alleges that the Chesapeake City Jail holds between 500–525 inmates in a facility designed to hold 250.

Briefly stated, Counts also alleges that the overcrowding prevents the cleaning of cells because of resistance to cleaning by inmates; that the meal service at the jail is inadequate; that medical treatment and the medical screening of incoming inmates at the jail are inadequate; that the conditions at the jail promote the breeding of insects and other vermin; that the jail has inadequate staff to provide security; that the jail's rehabilitation programs are inadequate; and that the jail provides inadequate recreation by limiting recreation in the multipurpose gym and failing to maintain a fact-and-fiction library.

Counts also directs two other claims at Sheriff Newhart. Counts argues that the law library at the jail is inadequate, that the deputy in charge of the library refused to give legal advice to the inmates, and that he has not been provided with a paralegal. Lastly, Counts alleges that Sheriff Newhart has prevented him from properly practicing his religion.

Counts claims that these conditions at the Chesapeake City Jail have caused him to suffer a "constant, daily, 24 hour physical and mental stress, measured by an increase in suffering from headaches, nervousness, and stomach cramps . . ."

Counts' claim against defendant Ron Angelone, Director of the VDOC, essentially states that Angelone has failed to enforce Virginia Code Section 53.1–20 which generally states that certain prisoners committed to the custody of the VDOC be transferred from local jail to the VDOC within sixty days of sentencing. Plaintiff argues that his detention in the Chesapeake City Jail for more than sixteen months was a violation of an interest created by Section 53.1–20 and protected by the Fourteenth Amendment.

## II. DEFENDANT ANGELONE'S MOTION TO DISMISS

### A. Standard for Dismissal for Failure to State a Claim

In construing a motion to dismiss, the facts alleged in plaintiffs' *pro se* complaint must be taken as true. *Loe v. Armistead,* 582 F.2d 1291, 1292 (4th Cir.1978), *cert. denied, Moffitt v. Loe,* 446 U.S. 928, 100 S.Ct. 1865, 64 L.Ed.2d 281 (1980). A *pro se* complaint, no matter how unartfully pleaded, must survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Haines v. Kerner,* 404 U.S. 519, 521, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972) (per curiam). A *pro se* complaint involving civil rights issues should be liberally construed. *Gordon v. Leeke,* 574 F.2d 1147, 1151 (4th Cir.), *cert. denied,* 439 U.S. 970, 99 S.Ct. 464, 58 L.Ed.2d 431 (1978). Dismissal may be appropriate where the complaint contains a detailed description of underlying facts which fail to state a viable claim. *Estelle v. Gamble,* 429 U.S. 97, 106–09, 97 S.Ct. 285, 292–94, 50 L.Ed.2d 251 (1976). If the complaint is broad, dismissal for failure to state a claim is improper. *Bolding v. Holshouser,* 575 F.2d 461 (4th Cir.), *cert. denied,* 439 U.S. 837, 99 S.Ct. 121, 58 L.Ed.2d 133 (1978). Finally, if a *pro se* complaint contains a potentially cognizable

claim, plaintiff should be allowed to particularize the claim. *Coleman v. Peyton*, 340 F.2d 603, 604 (4th Cir.1965).

## B. Analysis

■ Counts argues that Virginia Code Section 53.1–20 requires that he have been transferred from the Chesapeake City Jail into the custody of the VDOC within sixty days of sentencing and that the failure to do is a violation of the Fourteenth Amendment.[2] Angelone argues that this claim is not cognizable under Section 1983.[3]

### 1. Due Process

The Court will first analyze whether Counts has stated a claim under the Due Process Clause of the Fourteenth Amendment. In order for Counts to be able to litigate this violation of state law in federal court under Section 1983, Counts must demonstrate that the VDOC's failure to comply with state law amounts to a violation of an interest protected by the Fourteenth Amendment.

2. The relevant portion of the Fourteenth Amendment states: "nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, section 1.

3. Angelone also argues that he is entitled to qualified immunity pursuant to *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Whether a defendant is entitled to qualified immunity is appropriately determined on motion for summary judgment. *Siegert v. Gilley*, 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). Thus, the Court cannot rule on this issue except when deciding the merits, which is not the case on a motion to dismiss. Because Angelone has not moved for summary judgment and has not supplied the Court with any affidavits or other evidence, the Court will not address the issue whether he is entitled to qualified immunity.

4. Surprisingly, Angelone does not rely on the *Sandin* analysis (and does not even mention it in his brief). Instead, Angelone makes the broad assertion that a failure to comply with state law can never amount to a violation of the Due Process Clause. Such an argument is oversimplistic at best. The pre-*Sandin* cases relied upon by Angelone clearly recognize that state law may establish liberty or property interests protected

■ In *Sandin v. Conner*, —— U.S. ——, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court revisited the analysis used to determine when a prisoner has alleged the violation of an interest protected by the Due Process Clause.[4] Under *Sandin*, the "due process analysis begins with [*Wolff v. McDonnell* ]." *Sandin*, —— U.S. at ——, 115 S.Ct. at 2297. In *Wolff*, Nebraska prisoners claimed that it was a violation of their due process rights for prison officials to revoke good time credits without adequate procedures. *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). The Supreme Court, however, held that although the Due Process Clause itself does not create a liberty interest in credit for good behavior, the statutory provision created a liberty interest in a "shortened prison sentence" which resulted from good time credits, credits which were revocable only if the prisoner was guilty of serious misconduct. *Sandin*, —— U.S. at ——, 115 S.Ct. at 2297 (explaining the *Wolff* holding); *Wolff*, 418 U.S. at 557, 94 S.Ct. at 2975. The *Wolff* Court characterized this liberty interest as one of "real substance" and articulated mini-

by the federal Constitution. *See, e.g., Stewart v. Bailey*, 7 F.3d 384, 392 (4th Cir.1993) (applying pre-*Sandin* due process analysis). Even *Sandin* recognizes that state law may create an interest protected by the Due Process Clause. *Sandin*, —— U.S. at ——, 115 S.Ct. at 2299. Therefore, any argument that a plaintiff in a Section 1983 case can never rely on non-compliance with state law is clearly inconsistent with long-established interpretations of the Due Process Clause.

The Court further notes that had it applied the pre-*Sandin* analysis cited by Angelone, it likely would have ruled against Angelone. Angelone's own brief characterizes Virginia Code Section 53.1–20 as a non-discretionary requirement that prisoners in Counts' position be received into the custody of the VDOC within sixty days. If such were the case—and the Court emphasizes that it is not here construing the requirements of Section 53.1–20—pre-*Sandin* caselaw in the Fourth Circuit likely would have recognized a protected interest in such a transfer. *See Stewart*, 7 F.3d at 392 (stating in pre-*Sandin* analysis that when state law creates non-discretionary directives to a decision maker requiring specific outcomes, a protected liberty interest is created).

Fortunately for Angelone, the Court is bound by and will apply current caselaw as espoused by the Supreme Court in analyzing whether Counts has stated a claim for which relief may be granted.

mum procedures necessary to reach a "mutual accommodation between institutional needs and objectives and the provisions of the Constitution." *Wolff,* 418 U.S. at 556, 94 S.Ct. at 2975.

In *Sandin,* a Hawaii inmate sued prison officials and the state of Hawaii, challenging the imposition of disciplinary segregation for misconduct. Here, the Supreme Court stated:

> we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause by its own force, nonetheless *imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.*

*Sandin,* —— U.S. at ——, 115 S.Ct. at 2300 (citations omitted) (emphasis added). The Supreme Court recognized that although "prisoners do not shed all constitutional rights at the prison gate, . . . lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Id.* (citations omitted). Because the Court found that a prisoner's discipline, *inter alia,* did not inevitably affect the duration of the prisoner's sentence, the Court held that segregated confinement "did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Id.* at ——, 115 S.Ct. at 2301.

■ Under the *Sandin* standard, any interest merely in the place of confinement rarely will be one protected by the Due Process Clause. In recognition of *Sandin*'s admonition that "federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment," *id.* at ——, 115 S.Ct. at 2299, this Court finds that when litigating the place of confinement, the prisoner cannot rely upon state laws or regulations which amount to nothing more than procedural requirements for the management of state prisons and local jails. Such procedural requirements are designed to do nothing more than "guide correctional officials in the administration" of penal systems and "are not designed to confer rights on inmates." *Id.* The federal courts are simply not the proper forum for challenges to the "day-to-day management of prisons." *See id.*

Instead, the prisoner must demonstrate that the state's action with regard to the location of confinement, regardless of the mandates of state laws or regulations, also amounts to some adverse effect on the length of confinement or some substantive and substantial difference in the conditions of confinement—as compared to the other possible locations of confinement—which arises to the level of an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See id.* For example, an involuntary transfer from prison into a mental health facility may be so atypical from ordinary prison life that it amounts to a due process violation because it involves "consequences . . . qualitatively different from the punishment characteristically suffered by a person convicted of crime." *See Vitek v. Jones,* 445 U.S. 480, 493, 100 S.Ct. 1254, 1264, 63 L.Ed.2d 552 (1980). Or, the total immobilization of a prisoner in four point restraints may work such a major disruption of a prisoner's environment as to rise to the level of an atypical and significant hardship. *See Williams v. Benjamin,* 77 F.3d 756, 769 (4th Cir.1996).

■ In the instant case, it is clear that the Due Process Clause does not create any right to be transferred from local jail to state prison. An inmate generally has "no justifiable expectation that he will be incarcerated in any particular prison within a State," nor would he even have any "justifiable expectation that he will be incarcerated in any particular State." *Olim v. Wakinekona,* 461 U.S. 238, 245, 103 S.Ct. 1741, 1745, 75 L.Ed.2d 813 (1982). In fact, the transfer of a prisoners within a penal system or between independent penal systems is not at all uncommon and has been recognized as constitutionally sound. *See id.* at 246, 103 S.Ct. at 1746 (discussing statutes and interstate agreements regarding the transfer of in-

mates between states and between state and federal prison systems). Given the flexibility prison officials have in transferring prisoners between different states or between the state and federal systems, it is difficult to imagine that the housing of inmates in local jails as opposed to a state penitentiary can have any constitutional implications. Inmates simply have no protected interest with regard to the decision to transfer or not to transfer an inmate from local jail to state prison.

■ Nor does Virginia Code Section 53.1–20 create any interest protected by the Due Process Clause. Any failure of the VDOC to transfer Counts from local jail to state prison amounts only to a mere procedural violation which does not implicate the Due Process Clause. Assuming for the purposes of this case that Virginia Code Section 53.1–20 does mandate that all felons be transferred from local jail into the custody of the VDOC within sixty days of conviction,[5] such a requirement is only a procedural device governing the location of a prisoner. Whether Counts is confined in local jail as opposed to state prison, he is confined in an environment " 'within the normal limits or range of custody which the conviction has authorized the State to impose.' " *Olim*, 461 U.S. at 247, 103 S.Ct. at 1746 (citation omitted). Without a showing of some significantly atypical circumstance, such as a significant decrease in freedom or the placement of the prisoner into an environment not normally associated with incarceration for criminal activity, this Court finds that, for constitutional purposes, confinement is confinement, whether it be in a local jail, state prison, another state's prison, or federal prison.

### 2. Equal Protection

■ The Court also finds that no equal protection claim is available to Counts.[6] As already discussed, Counts has no right recognized by the federal Constitution to be confined in state prison instead of a local jail. *See supra* Part II.B.1. He is therefore not similarly situated for equal protection purposes with inmates in state prison. *See Strickler, v. Waters,* 989 F.2d 1375, 1389 (4th Cir.1993). Any differences between Counts' treatment in local jail and the treatment of state prisoners in state prison therefore do not amount to any cognizable violation of the Equal Protection Clause.

■ In addition, even if Counts had an equal protection claim, such a claim would be analyzed under the "rational relationship" analysis, not "strict scrutiny," because inmates are not a protected class and Counts cannot rely on the violation of a fundamental right. *See O'Bar v. Pinion,* 953 F.2d 74, 82 (4th Cir.1991); *Moss v. Clark,* 886 F.2d 686, 689 (4th Cir.1989); *Johnson v. Department of Pub. Safety and Correctional Servs.,* 885 F.Supp. 817, 821 (D.Md.1995); *Hill v. Hutto,* 537 F.Supp. 1185, 1188 (E.D.Va.1982). Counts has not alleged that the Commonwealth of Virginia has no rational reason for housing him in local jail instead of a state prison. Further, the Fourth Circuit has already indicated that a state has a rational basis for housing inmates in local jails instead of state prison. *See Strickler,* 989 F.2d at 1389 (stating that it was "highly improbable" that an inmate could show that the housing of state inmates with pending local charges in local jail was not rationally related to a legitimate state interest). The Court therefore finds that Counts has failed to allege a violation of the Equal Protection Clause.

Accordingly, this Court finds that as a matter of law Counts has failed to state a claim under the Fourteenth Amendment against Angelone that, under any set of facts, can be construed as cognizable. Further,

---

**5.** The Court emphasizes that it is not here interpreting or construing Virginia Code Section 53.1–20. In order to decide this motion for dismissal, the Court need not reach the issue of whether or not this section does in fact require transfer within sixty days as Counts argues.

**6.** Counts does not directly raise any equal protection claim in his pleadings. Counts did, however, originally ask for transfer from Chesapeake

City Jail to a state prison, presumably because he felt that prisoners in state prison were treated better than inmates in the local jail. Given the Court's duty to interpret his *pro se* pleadings liberally and the fact that such claims have been raised in similar cases in the past, it is necessary to address whether an equal protection claim exists.

because the claim is neither broad nor potentially cognizable, there is no reason to allow Counts to amend his complaint.

### III. DEFENDANT NEWHART'S MOTION FOR SUMMARY JUDGMENT

#### A. Standard for Summary Judgment

Summary judgment under Federal Rule of Civil Procedure 56 is appropriate only if the court, in viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Terry's Floor Fashions, Inc. v. Burlington Indus., Inc.,* 763 F.2d 604, 610 (4th Cir.1985). Once a party has properly filed evidence supporting the motion for summary judgment, the nonmoving party may not rest upon mere allegations in the pleadings, but must instead set forth specific facts illustrating genuine issues for trial. *Celotex Corp.,* 477 U.S. at 322–24, 106 S.Ct. at 2552–53. Such facts must be presented in the form of exhibits and sworn affidavits. Failure by plaintiff to rebut defendants' motion with such evidence in his behalf will result in summary judgment when appropriate. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. at 2552.

#### B. Analysis

Counts' suit against Sheriff Newhart essentially sets out three claims. Counts alleges the following: that the overall conditions at the jail constitute cruel and unusual punishment, that the jail's law library is insufficient, and that Sheriff Newhart has denied him the right to practice his religion. The Court will address these allegations in turn.

#### 1. Overall Jail Conditions

The Eighth Amendment does not require that prisons be comfortable, only that they be humane. *Farmer v. Brennan,* 511 U.S. 825, 830–31, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994). Consequently, a *prima facie* case that a jail is in violation of the Eighth Amendment prohibition against cruel and unusual punishment must demonstrate " '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.' " *Strickler,* 989 F.2d at 1379 (quoting *Williams v. Griffin,* 952 F.2d 820, 824 (4th Cir.1991)). According to the Supreme Court, the first prong of this test requires that the deprivation of the basic human need be objectively sufficiently serious, and the second prong is a subjective inquiry into whether the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian,* 503 U.S. 1, 8, 112 S.Ct. 995, 999–1000, 117 L.Ed.2d 156 (1992); *Wilson v. Seiter,* 501 U.S. 294, 299, 111 S.Ct. 2321, 2324–25, 115 L.Ed.2d 271 (1991); *see also Strickler,* 989 F.2d at 1379.

The first element—the serious deprivation of a basic human need—can be satisfied by demonstrating that a "totality of prison conditions ... combined to show an Eighth Amendment violation." *Williams,* 952 F.2d at 824. Under this "totality of conditions" test, different conditions of confinement

> may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produced the deprivation of a single, identifiable human need.... Nothing so amorphous as "overall conditions" can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists.

*Wilson,* 501 U.S. at 304–05, 111 S.Ct. at 2327; *see also Williams,* 952 F.2d at 824. Further, because the Eighth Amendment "does not prohibit cruel and unusual prison *conditions*" but instead prohibits "cruel and unusual *punishments,*" a prisoner who has not suffered a "serious or significant physical or mental injury as a result of the challenged conditions" has not demonstrated that he was

"subjected to cruel and unusual punishment within the meaning of the Amendment." *Strickler*, 989 F.2d at 1381 (emphasis added).

Thus, in order to satisfy the first element and withstand a motion for summary judgment, a plaintiff must demonstrate that at least some of the challenged conditions in combination have specifically deprived him of a single human need, *Williams*, 952 F.2d at 824, and must "produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler*, 989 F.2d at 1382 (reaffirming Fourth Circuit's holding in *Lopez v. Robinson*, 914 F.2d 486, 490 (4th Cir.1990), that prisoner must produce evidence of "serious medical and emotional deterioration attributable to the challenged condition").

The Court now analyzes whether Counts has met this burden. Counts has alleged a long list of jail conditions which he claims amounts to cruel and unusual punishment. Initially, the Court notes that two of these claims are without constitutional significance.

■ First, Counts argues that the fact-and-fiction library at the Chesapeake City Jail is inadequate and poorly maintained. The Constitution contains no right of access to a general-literary library, nor is this Court inclined to recognize such a right. The fact that Counts may want to read a fictional literary work not available to him amounts to nothing more than a simple annoyance and under no circumstances can it amount to cruel and unusual punishment.

■ Second, Counts argues that the rehabilitation and education programs at the Chesapeake City Jail are inadequate and poorly staffed. There is no constitutional right to drug rehabilitation or education in prison. *See Fredericks v. Huggins*, 711 F.2d 31, 34 (4th Cir.1983) ("[A]n individual's 'right' to detoxification is foregone once he is incarcerated in a penal institution that is unable to provide it."). Such programs are merely privileges which a state or local government may elect to provide to inmates in its prisons. The Constitution does not require that such programs be adopted or, if they are adopted, that they be fully funded. The decision to provide these programs is not one which is generally reviewable by the federal courts.[7]

These claims are simply not cognizable violations of the Eighth Amendment, nor could they combine with any other conditions to create a violation under the totality of conditions test. For example, the Court cannot conceive of any possible situation in which the lack of a fact-and-fiction library can combine with any other condition and amount to an Eighth Amendment violation. If Counts is to demonstrate that the totality of conditions at the Chesapeake City Jail constitutes cruel and unusual punishment, he will have to rely on the other conditions stated in his complaint and not those discussed above.

■ After carefully considering the other conditions of Counts' confinement, the Court finds that Counts has failed to raise any Eight Amendment violation. The Fourth Circuit has held that "the mere incantation of 'physical and mental injury,' ... is inadequate to survive a motion for summary judgment." *Strickler*, 989 F.2d at 1381 n. 9. Counts has not produced any evidence of a serious or significant physical or emotional injury resulting from the challenged conditions. Counts has merely made conclusory and unsupported statements that the conditions have caused him mental and physical stress which only he attributes to the conditions at the jail. Counts has not presented any affidavits or evidence to rebut Sheriff Newhart's showing that Counts never complained of these symptoms or sought medical diagnosis and treatment for them while at the Chesapeake City Jail, despite the opportunity for Counts to present such evidence. Nor has Counts put forth any medical evidence of these injuries.[8] As stated, it is

---

7. Further, the Court doubts that a state law or regulation could create such a right. See *Sandin*, discussed *supra* at Part II.B.1., —— U.S. at ——, 115 S.Ct. at 2300 (stating that a prisoner has not demonstrated a due process violation without a showing of some atypical and significant hardship on the inmate), and *Fredericks*, 711 F.2d at 34.

8. The Court notes that a statute recently enacted by Congress would not even allow an unsupported Eighth Amendment claim to reach the summary judgment stage. Under this statute, "[n]o

Counts' burden at the summary judgment stage to present such evidence, see *Celotex*, 477 U.S. at 322–24, 106 S.Ct. at 2552–53, discussed *supra* at Part III.A, and Counts received notice that failure to fulfill this burden could lead to a dismissal of this action pursuant to *Roseboro v. Garrison*.

The Court finds that the unsupported and conclusory allegations of injury made by Counts are insufficient to satisfy the first requirement of an Eighth Amendment claim—that the plaintiff demonstrate a serious physical and emotional injury attributable to the deprivation of a single human need. Because Counts' claim fails on this requirement, the Court need not address whether Counts has shown deliberate indifference to the challenged conditions on the part of Sheriff Newhart.

### 2. Law Library

Counts' challenge in this regard relies on allegations that the Chesapeake City Jail allows only arbitrary and insufficient access to the law library, that the official in charge of the law library does not provide legal assistance, and that he was denied the assistance of a paralegal. The Court finds that these allegations are without merit.

■ Two of these allegations are easily dismissed. A prisoner has no right to a paralegal when a law library is present. *See Bounds v. Smith*, 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977). Nor does the Constitution require that jail personnel without legal training provide legal assistance. The primary function of jail personnel is to provide security and to aide in the administration of the jail. Jail personnel are not required to have legal training sufficient for the giving of legal advice. Any such requirement would only interfere with the jail personnel's primary duties and likely lead to the giving of erroneous legal advice. The Court therefore finds that these two allegations are without merit.

■ Counts' claim also fails on his third allegation—that access to the library is arbitrary and that the library is insufficient. Generally, a local jail is not required to maintain as extensive a law library as a state prison, a requirement based, at least in part, on the temporary nature of detention in a local jail. *See Strickler*, 989 F.2d at 1386 ("A local facility need not provide the same resources, much less the same quality or extent of resources, as must a state facility, because the expectation is that its occupants will be confined there only briefly and that they will have access to more extensive resources upon arrival at a state correctional facility.") Counts, however, was detained in the Chesapeake City Jail for sixteen months, much longer than the six-month detention of the plaintiff in *Strickler*. Such a confinement may require more access and a more extensive library. As will be shown, however, the Court does not need to reach this issue and therefore does not decide whether a sixteen-month incarceration in local jail would require access to a more extensive law library.

■ The right relied upon here is not to a law library itself, but to reasonable access to state and federal courts. *See Bounds*, 430 U.S. at 821, 97 S.Ct. at 1494; *Strickler*, 989 F.2d at 1383. The Supreme Court has only held that in order to provide reasonable access to courts, a state must provide either a law library or persons trained in law in order to allow prisoners to prosecute both post-conviction proceedings and civil rights actions. *Bounds*, 430 U.S. at 828, 97 S.Ct. at 1498; *see also Strickler*, 989 F.2d at 1383. The requirement that a jail or prison maintain a law library is ancillary to the right of reasonable access and is not a right in and of itself. *Lewis v. Casey*, —— U.S. ——, —— ——, 116 S.Ct. 2174, 2179–80, 135 L.Ed.2d 606 (1996). Access to courts, then, not the adequacy of the law library, must be the focal point of this analysis.

■ Because of the focus on access to courts, an inmate is required to show some actual harm caused by a denial of access to

---

Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. Section 1997e(e). Under this statute, claims similar to the one brought by Counts would be dismissed at the outset.

court in order to state a constitutional claim; in other words, that the inadequate law library adversely affected some pending action already brought by the inmate. *See Lewis,* —— U.S. at ——, 116 S.Ct. at 2180; *American Civ. Liberties Union v. Wicomico County,* 999 F.2d 780 (4th Cir.1993); *Hause v. Vaught,* 993 F.2d 1079 (4th Cir.1993), *cert. denied,* 510 U.S. 1049, 114 S.Ct. 702, 126 L.Ed.2d 668 (1994); *Strickler,* 989 F.2d at 1383. In *Strickler,* an inmate at the Portsmouth City Jail brought a claim similar to Counts' claim—that the law library and access to it was inadequate. The Fourth Circuit found that a vague and conclusory allegation that the inmate would have brought a *habeas corpus* petition at an earlier date did not state a specific injury or prejudice sufficient to survive summary judgment. *Strickler,* 989 F.2d at 1383.

Counts does not even allege as much as the plaintiff in *Strickler.* Counts alleges no injury at all to any case he sought to bring to a state or federal court. An allegation of a specific injury is an "essential ingredient" of Counts' claim because " 'the prisoner must be able to show that the rules interfered with his entitlement (access to courts) rather than with a mere instrument for vindicating an entitlement (access to books).' " *Id.* at 1385 (quoting *DeMallory v. Cullen,* 855 F.2d 442, 452 (7th Cir.1988) (Easterbrook, J., dissenting)). Because Counts has not alleged any such specific injury, he has not satisfied the threshold requirement of an access-to-courts claim, regardless of the adequacy of the jail's law library or the length of his detention in the city jail. *See id.* at 1384. Counts' claim regarding the Chesapeake City Jail's law library therefore fails.

### 3. Practice of Religion

The Court will now address Counts' claim that Sheriff Newhart has denied him

his right to practice his religion.[9] A person incarcerated for commission of a crime retains his First Amendment rights "to the extent that those rights are not 'inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.' " *Barrett v. Virginia,* 689 F.2d 498, 501 (4th Cir.1982) (quoting *Pell v. Procunier,* 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974)). A prisoner must therefore be afforded "reasonable opportunities ... to exercise the religious freedom guaranteed by the First and Fourteenth Amendments without fear of penalty." *Cruz v. Beto,* 405 U.S. 319, 322 n. 2, 92 S.Ct. 1079, 1081 n. 2, 31 L.Ed.2d 263 (1972) (per curiam); *see also Barrett,* 689 F.2d at 501. Further, the Religious Freedom Restoration Act ("RFRA") prevents the government from "substantially burdening a person's exercise of religion "unless it "demonstrates that application of the burden ... is in furtherance of a compelling governmental interest; and ... is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. Section 2000bb–1; *see also American Life League, Inc. v. Reno,* 47 F.3d 642 (4th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 55, 133 L.Ed.2d 19 (1995); *Goodall by Goodall v. Stafford County School Bd.,* 60 F.3d 168 (4th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 706, 133 L.Ed.2d 661 (1996).[10]

Thus, the first step in analyzing a claim involving the denial of religious freedom is to determine if the plaintiff has demonstrated that the defendant's actions have substantially burdened his ability to practice his religion. *Goodall by Goodall,* 60 F.3d at 171. If it is determined that the plaintiff's complaint alleges a substantial burden on the exercise of religion, then the court must analyze whether the government has presented a

**9.** Sheriff Newhart argues that Counts' religion claim is moot because he has been transferred to a state institution. Such would be the case if Counts were merely seeking injunctive relief. But Counts is now seeking monetary damages for past infringements on his civil rights. Such a case does not become moot merely because Counts has been transferred to a state institution. The Court therefore rejects Sheriff Newhart's argument that Counts' religion claim is moot and will proceed to determine if Counts has presented enough evidence to survive a motion for summary judgment.

**10.** The Court notes that at the time this Opinion was issued, the Supreme Court had agreed to review the constitutionality of the Religious Freedom Restoration Act. *See City of Boerne v. Flores,* —— U.S. ——, 117 S.Ct. 293, 136 L.Ed.2d 212 (1996) (granting certiorari in *Flores v. City of Boerne,* 73 F.3d 1352 (5th Cir.1996)).

compelling governmental interest which is furthered by the government's action and has demonstrated that its regulation is the least restrictive means of furthering that interest. *American Life League,* 47 F.3d at 655.

The Court finds that Counts has failed to demonstrate that a substantial burden has been placed on his ability to practice his religion. Counts did not raise any religion claim in his original complaint. In the questionnaire he filed at this Court's request, he merely stated that Sheriff Counts had instituted a "restriction placed on me to keep my [sic] from practicing my religion Al Islam." Counts made other vague allegations in his response to Sheriff Newhart's motion. None of these allegations have been stated by Counts in an affidavit or otherwise under penalty of perjury. No specific instances of any interference in his ability to practice his religion have been presented by Counts, nor has he specifically stated how Sheriff Newhart personally denied him the ability to practice his religion.

■ Such general and unsupported allegations are insufficient to survive summary judgment. As stated, when a defendant moves for summary judgment, it is the plaintiff's responsibility to present evidence to support the essential elements of his claim. *See supra* Part III.A. Counts was notified of his responsibility pursuant to *Roseboro v. Garrison.* The record is devoid of any evidence to support Counts' allegations against Sheriff Newhart. The only evidence in the record is a letter put forth by Sheriff Newhart dated December 19, 1995, and signed by two other correctional officers. This letter denies a request by Counts and other in-

mates for group worship. The letter goes on to state that Counts is allowed to receive religious material and visits from a minister. The only possible claim that could arise from this action is the denial of group religious services.

■ Without more, a denial of group religious services in a prison environment, where security is a primary concern, does not demonstrate a substantial burden on the exercise of religion if inmates are allowed to receive religious material and to have visits from a minister. Maintaining order and security in a jail understandably provides jail personnel cause for concern whenever presented with the possibility of groups of prisoners congregating outside their cells. Further, because he was allowed to receive religious material and to have visits with a minister, Counts had alternate channels to practice his religion. Any burden caused by the denial of group services is offset by these reasonable opportunities to practice his religion. Counts has presented no evidence that these alternatives were denied him. Counts has therefore failed to demonstrate that a substantial burden was placed on his ability to practice his religion. Accordingly, the Court need not reach the issue of whether a compelling justification furthered by the least restrictive means has been put forth.[11]

### IV. Conclusion

For the reasons discussed above, defendant Angelone's motion to dismiss is GRANTED, and defendant Newhart's motion for summary judgment is GRANTED. Plaintiff's suit is therefore DISMISSED.

---

11. Even if Counts had demonstrated a substantial burden as required by RFRA, it is still doubtful that he would have prevailed. Section 1983 liability is personal in nature, and the doctrine of *respondeat superior* is generally inapplicable to actions brought under the statute. *Monell v. Department of Social Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978); *Lopez v. Robinson,* 914 F.2d 486, 494 (4th Cir. 1990). In order to establish liability for civil rights violations, a prisoner must show that the defendant (1) personally violated a specific right under federal law; (2) implemented an official policy which resulted in a constitutional violation; or (3) tacitly authorized or demonstrated deliberate indifference to the unlawful conduct of subordinates. *See Gaston v. Taylor,* 918 F.2d 25, 29 (1990), *vacated on other grounds on reh'g,* 946 F.2d 340 (4th Cir.1991); *Slakan v. Porter,* 737 F.2d 368, 372–73 (4th Cir.1984), *cert. denied,* 470 U.S. 1035, 105 S.Ct. 1413, 84 L.Ed.2d 796 (1985); *Fisher v. Washington Metro. Area Transit Auth.,* 690 F.2d 1133, 1142–43 (4th Cir.1982). Counts appears to rely solely on the fact that Sheriff Newhart runs the Chesapeake jail for his conclusion that the Sheriff is liable for actions taken by the jail and its staff. Such a claim is not "personal in nature" without some showing of some involvement by Sheriff Newhart in the challenged conduct. Such a showing has neither been alleged nor demonstrated.

Defendants' requests for costs and sanctions is DENIED.

IT IS SO ORDERED.