**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

LATIF KHALIQ; ROGER HENRY;
LAMONT NELSON; FRANKLIN HOWARD;
MICHAEL COOPER; OTIS BLACKMON;
EMMANUEL HUNT; CHRISTOPHER
CLARK; MICHAEL NORWOOD; DONALD
BOWEN, SR.; JOHN BARMORE; RALPH
SHIFFLETT; KEVIN FORD; JAMES LANG;
ALBEMARLE-CHARLOTTESVILLE
REGIONAL JAIL AUTHORITY, Members
of the Board, in their official
capacities and as an involuntary
party plaintiff pursuant to Rule 19,
Federal Rules of Civil Procedure -
Mitchell Newman, Chairperson of
the Authority Board; KENNETH N.
BUSSIE; JEREMY ZIOLKOWSKI;
EMMANUEL HUNT; FREDERICK C.
SHELTON; VINCENT MOORE; JOHNNY
LEE LAYNE; GERMAINE A. PAYNE;
GEORGE AYERS; TYRONE CURRY;
STEVEN ROBINSON; TERRY DILLARD;
JASON VIA; ANTHONY HENSHAW;
WILLIAM F. WILLIS; DERRICK STINNIE,
        *Plaintiffs-Appellants,*

v.

RONALD J. ANGELONE, Director of
the Virginia Department of
Corrections, sued in his personal
and official capacity,
        *Defendant-Appellee.*

No. 02-7365

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
Jackson L. Kiser, Senior District Judge.
(CA-01-652-7)

Argued: April 4, 2003

Decided: July 21, 2003

Before WILKINS, Chief Judge, and TRAXLER and
GREGORY, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

**COUNSEL**

**ARGUED:** Edward M. Wayland, Charlottesville, Virginia, for
Appellants. Mark Ralph Davis, Public Safety and Enforcement Divi-
sion, OFFICE OF THE ATTORNEY GENERAL, Richmond, Vir-
ginia, for Appellee. **ON BRIEF:** Steven D. Rosenfield,
Charlottesville, Virginia; Rebecca K. Glenberg, Richmond, Virginia,
for Appellants. Jerry W. Kilgore, Attorney General, Susan F. Barr,
Assistant Attorney General, Public Safety and Enforcement Division,
OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for
Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Appellants, state prison inmates in the custody of the Virginia
Department of Corrections who were housed at the Albemarle Char-

lottesville Regional Jail (the "ACRJ"), filed this action under 42 U.S.C.A. § 1983 (West Supp. 2003), alleging that the defendant, Ronald J. Angelone, in his personal and official capacity as Director of the Virginia Department of Corrections (the "VDOC"), violated their rights under the Equal Protection Clause of the United States Constitution. Specifically, Appellants assert that the Director, by confining them in the local jail, has provided them with inferior conditions of confinement and denied them programs and opportunities comparable to those available to state prison inmates housed in state facilities operated by the VDOC. The district court, upon recommendation of the magistrate judge, dismissed the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. We affirm.

## I.

Appellants consist of twenty-nine state prisoners in the custody of the VDOC pursuant to sentences imposing incarceration for at least one year. Under § 53.1-20.B of the Virginia Code, "[p]ersons convicted of felonies . . . and sentenced to the Department or sentenced to confinement in jail for a year or more shall be placed in the custody of the Department and received by the Director into the state corrections system within sixty days of the date on which the final sentencing order" is sent to the Director. Va. Code Ann. § 53.1-20.B (Michie 2002). "If the Director is unable to accommodate in a state correctional facility any convicted felon . . . who is required to serve a total period of one year or more in a state correctional facility," then "the Department of Corrections shall compensate local jails for the cost of incarceration as provided for in the general appropriation act." Va. Code Ann. § 53.1-20.1 (Michie 2002).

When Appellants were not transferred from the ACRJ to a state correctional facility after the sixty-day period under § 53.1-20.B had passed, they filed this action against the Director on behalf of themselves and a proposed class of similarly situated prisoners who were also confined in the ACRJ awaiting transfer to a state correctional facility.[1] Appellants allege that their confinement in the local jail violated

---

[1]The Board of Directors of the ACRJ was named as an involuntary plaintiff pursuant to Rule 19 of the Federal Rules of Civil Procedure.

their rights to equal protection under the Fourteenth Amendment because they were subjected to inferior conditions of confinement and denied programs and opportunities available to state prisoners who are housed in state correctional facilities.

Specifically, Appellants set forth eight ways in which state inmates housed in the ACRJ are treated dissimilarly from those housed in state facilities: (1) ACRJ inmates enjoy significantly less space and less humane conditions of confinement than those in a state facility; (2) ACRJ inmates are not permitted to participate in work release programs and earn money; (3) ACRJ inmates are not permitted to earn money for work performed inside the local facility; (4) ACRJ inmates are not eligible for furlough programs; (5) ACRJ inmates are not permitted contact visits with family members; (6) ACRJ inmates are denied meaningful exercise, in contrast to the regular exercise available to state facility inmates; (7) ACRJ inmates are denied work and vocational training program opportunities; and (8) ACRJ inmates are often denied elective medical treatment and surgery pending their transfer to a state facility.[2]

By way of remedy, Appellants sought an order requiring the Director to either transfer them to a state correctional facility within fifteen days or make available to them the opportunities and programs that they would have if they were housed in a state correctional facility. Appellants also sought compensatory and punitive damages for the violation of their constitutional rights.

The Director moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). The district judge referred the matter to a magistrate judge, who subsequently issued a report and recommendation that the state's motion be granted because Appellants were not similarly situated to state prisoners housed in state facilities and, in the alternative, because the denial of comparable conditions was ratio-

---

[2]Appellants originally alleged that the conditions of their confinement also constituted cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution and Article 1, Section 8 of the Virginia Constitution. Because the district court granted Appellants' motion for voluntary dismissal of these claims, we do not consider these claims.

nally related to a legitimate state objective. The district court agreed that Appellants' equal protection claim failed because they were not similarly situated to state prisoners housed in state facilities and, therefore, found it unnecessary to reach the question of whether the state's actions met the rational basis test. This appeal followed.

## II.

We review the district court's decision to dismiss the complaint under Rule 12(b)(6) *de novo*. *See Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002). A complaint will be dismissed for failure to state a claim upon which relief may be granted if, assuming the facts alleged in the complaint are true and drawing all reasonable factual inferences in the plaintiffs' favor, the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See id.*

The Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. It "does not take from the States all power of classification, but keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Veney*, 293 F.3d at 730 (citation and internal quotation marks omitted). Thus, Appellants "'must first demonstrate that [they] ha[ve] been treated differently from others with whom [they are] similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination.'" *Veney*, 293 F.3d at 730 (quoting *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001)). Because "[p]risoners are not a suspect class," and "[t]he status of incarceration is neither an immutable characteristic, nor an invidious basis of classification," Appellants must demonstrate that any unequal treatment is not rationally related to a legitimate governmental purpose. *Moss v. Clark*, 886 F.2d 686, 690 (4th Cir. 1989) (citations omitted).

## A.

We begin with the district court's conclusion that Appellants, while housed in the local jail, were not similarly situated to state prisoners housed in state correctional facilities. More specifically, we must examine whether state inmates housed in a local facility are similarly situated to state inmates housed in state facilities for purposes of eval-

uating the physical space, and the programs and opportunities made available to them, *e.g.*, the opportunity to participate in work release programs, work for pay inside the facility, furlough programs, contact visits, additional exercise, work and vocational training program opportunities, and elective medical treatment and surgery. *See Klinger v. Dep't. of Corr.*, 31 F.3d 727, 731 (8th Cir. 1994) ("The similarly situated inquiry focuses on whether the plaintiffs are similarly situated to another group for purposes of the challenged government action."). We conclude that they are not.

This is not our first occasion to address an inmate's equal protection challenge to the conditions of imprisonment based upon the locale of confinement. In *Moss v. Clark*, inmates convicted and sentenced in the District of Columbia brought an equal protection claim under the Fifth Amendment because persons convicted of crimes in the District of Columbia were not treated the same with regard to good time credits. Inmates sentenced under District law and housed in D.C. prisons could accumulate good time credits under the District of Columbia Good Time Credits Act, whereas inmates sentenced under District law but housed in federal prisons could only accumulate good time credits under the federal good time system, which provided less generous credits and a diminished opportunity to reduce the ultimate sentence. *See Moss*, 886 F.2d at 688-89.

The district court concluded that the District of Columbia's Good Time Credits Act violated the equal protection rights of the inmates by creating a distinction between D.C. Code offenders housed in D.C. correctional facilities and D.C. Code offenders housed in federal penal institutions, and held that the distinction bore no rational relationship to the governmental purpose of relieving overcrowding in the D.C. prisons. We reversed, rejecting the inmates' "contention that inmates incarcerated in District and federal facilities are in fact so similarly situated that different treatment of them defies rational explanation." *Id.* at 691. We explained:

> The equal protection clause guarantees that all persons similarly circumstanced shall be treated alike. The equal protection clause does not, however, require things which are different in fact or opinion to be treated in law as though they were the same. District of Columbia prisoners do not

become similarly situated to prisoners in federal facilities with regard to parole eligibility simply because both were sentenced in the District of Columbia Superior Court under the District of Columbia Code. After sentencing, all individuals are remanded to the authority of the Attorney General who determines the location of their incarceration. Thereafter, for purposes of imprisonment and parole, the class to which [an inmate] belongs consists of the persons confined as he was confined, subject to the same conditions to which he was subject.

*Id.* (citations and internal quotation marks omitted); *see also Bates v. Wilkinson*, 267 F.2d 779, 781 (5th Cir. 1959) (rejecting claim of military prisoner confined in civilian prison because he was subjected to a conditional "good time" release while military prisoners confined to military disciplinary barracks received unconditional "good time" releases; prisoner was "treated as any other military prisoner who is confined in a federal prison, being subject to the advantages and disadvantages of the civilian prison").

We reached a similar conclusion in *Strickler v. Waters*, 989 F.2d 1375 (4th Cir. 1993). After Strickler was convicted and sentenced by the City of Portsmouth Circuit Court to a prison term, he was committed to the Portsmouth City Jail pending an unrelated trial in the Virginia Beach Circuit Court. He alleged that the differing conditions in the local jail — overcrowding, inadequate exercise facilities, poor climatological conditions, and an inadequate library to which he had restricted access — violated his equal protection rights. We declined to allow Strickler to pursue this claim against the Director because, *inter alia*, Strickler failed to demonstrate that he was similarly situated to state inmates housed in state facilities:

[A]bsent a right to have been housed in a state facility during the time he was confined at Portsmouth, a right that Strickler did not and almost surely could not allege (and one that the State of Virginia does not believe he has, *see* Va. Code Ann. § 53.1-20), he was not similarly situated for equal protection purposes with state prisoners in state facilities, and therefore his claim necessarily would have failed.

*Strickler*, 989 F.2d at 1389.**³**

We find these principles to be controlling here. Appellants had no federal right to be housed in any particular state facility, or in a state corrections facility as opposed to a local jail compensated by the state for the cost of incarcerating state inmates pending their transfer to an available and appropriate space within a state facility. Once convicted and sentenced, the state inmates housed in local jails are committed to the custody of the Director of the VDOC, who is charged with receiving them into the state corrections system within sixty days of the final sentencing order being sent. *See* Va. Code Ann. 53.1-20.B. Those unable to be accommodated in an adult state correctional facility, however, may serve their sentences in a local correctional facility compensated by the VDOC for the cost of the inmate's incarceration. *See* Va. Code Ann. § 53.1-20.1. However, an inmate awaiting transfer to a state correctional facility beyond the sixty-day period does not become similarly situated to an inmate already housed in a state facility simply because they were both sentenced in Virginia state court for violations of the Virginia criminal code. Rather, and as we have previously held, "for purposes of imprisonment and parole, the class to which [an inmate] belongs consists of the persons confined as he

---

**³**In *Counts v. Newhart*, 951 F.Supp. 579 (E.D. Va. 1996), *aff'd* 116 F.3d 1473 (4th Cir. 1997), a plaintiff-inmate brought an action under § 1983, also challenging his conditions of confinement (overcrowding, unsanitary conditions, inadequate meal service, inadequate medical treatment and screening, inadequate rehabilitation programs and inadequate recreation) at the Chesapeake City Jail where he was assigned, and the failure of the Virginia Department of Corrections to transfer him to a state facility within the sixty-day time frame specified under § 53.1-20 of the Virginia Code. Relying primarily upon our decision in *Strickler*, the district court found no equal protection violation and dismissed the claim, concluding that the plaintiff "ha[d] no right recognized by the federal Constitution to be confined in state prison instead of a local jail. He [was] therefore not similarly situated for equal protection purposes with inmates in state prison." *Counts*, 951 F.Supp. at 585 (citation omitted). Even if similarly situated, the district court also concluded, the claim would fail because Counts "ha[d] not alleged that the Commonwealth of Virginia ha[d] no rational reason for housing him in a local jail instead of a state prison." *Id.*

was confined, subject to the same conditions to which he was subject." *Moss*, 886 F.2d at 691 (internal quotation marks omitted).[4]

Finally, we are unpersuaded by Appellants' contention that our holdings in *Strickler* and *Moss* are inherently flawed, and should not be followed in this case, because they would allow the Director "to send all black inmates to a local jail and to accept only white prisoners into state facilities." Appellants' Brief at 22. Under such a holding, Appellants argue, black inmates would be automatically precluded from raising an equal protection challenge because they would not be similarly situated to white state prisoners. Appellants, of course, have made no claim that they were deprived of an *assignment* to a state facility for discriminatory reasons, much less for racially discriminatory reasons. But in any event, the hypothetical advanced by Appellants entirely misconstrues our holdings regarding the similarly situated inquiry. Under our holdings, all state-eligible inmates, black and white, housed in the local jail *would be* similarly situated for purposes of *assignment* to a state correctional facility from a local correctional facility. *See Moss*, 886 F.2d at 691. If the assignment of local facility inmates to state facilities was being made by the Director on the basis of race, then the Director *would be* treating similarly situated inmates differently. That, of course, is a far cry from the allegations before us today.

## B.

As an alternative ground for affirming the district court, the Director asserts that, even if we assume or conclude that Appellants are similarly situated to state prisoners housed in state facilities for purposes of the challenged conduct, we should affirm the dismissal

---

[4]As correctly noted by the district court, Appellants rely almost exclusively upon the district court decision in *Hill v. Hutto*, 537 F.Supp. 1185 (E.D.Va. 1982), for their contention that they are similarly situated to state inmates housed in state facilities. In *Hill*, the district court held that the inmates housed in a local facility had made a legitimate claim under the equal protection clause based on the denial of programs and opportunities comparable to those available to state prisoners housed in state facilities. *Hill*, however, is inconsistent with our subsequent decisions in *Moss* and *Strickler*.

because there is a rational basis for the disparate treatment. *See Ostrzenski v. Seigel*, 177 F.3d 245, 253 (4th Cir. 1999) (noting that the court may affirm the district court's dismissal "on the basis of any ground supported by the record"). We agree.

Because the classification of inmates based upon their situs of incarceration does not employ a suspect class or burden a fundamental right, it "is accorded a strong presumption of validity." *Heller v. Doe*, 509 U.S. 312, 319 (1993). "The only proper judicial inquiry is whether the [classification] serves a legitimate state [penological] interest and whether the challenged classification is rationally related to it." *Moss*, 886 F.2d at 690. Even where similarly situated persons are treated differently, a state classification "that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for [it]". *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313 (1993); *see McGowan v. Maryland*, 366 U.S. 420, 426 (1961) (noting that such classifications "will not be set aside if any state of facts reasonably may be conceived to justify it"). "Moreover, the burden rests on the one challenging the [classification] to disprove the existence of every conceivable basis which might support it." *Mitchell v. Comm'r of the Soc. Sec. Admin.*, 182 F.3d 272, 274 (4th Cir. 1999) (internal quotation marks omitted). The reasons need not actually motivate the state's conduct or action; they need only reflect a set of facts reasonably conceived to justify the action. *See id.* at 274-75. Nor must the state "articulate its reasoning at the moment a particular decision is made. Rather, the burden is upon the challenging party to negative any reasonably conceivable state of facts that could provide a rational basis for the classification." *Board of Trustees of the Univ. of Alabama v. Garrett*, 531 U.S. 356, 367 (2001) (internal quotation marks omitted).

Appellants' allegations, if proven, fail to establish that their imprisonment in the ACRJ was irrational, arbitrary, or otherwise not in furtherance of a legitimate penological interest. Appellants' complaint conclusorily asserts that "[d]enying [them] opportunities and programs available to state prisoners in state facilities . . . irrationally discriminates against state prisoners confined to the ACJR by treating them differently from state prisoners confined in state correctional

facilities." J.A. 66. However, the facts alleged in the complaint, even if true, do not bear out such an equal protection claim.

"'There is no doubt that discipline and administration of state detention facilities are state functions. They are subject to federal authority only where paramount federal constitutional or statutory rights supervene.'" *Kersh v. Bounds*, 501 F.2d 585, 588 (4th Cir. 1974) (quoting *Johnson v. Avery*, 393 U.S. 483, 486 (1969)); *see also Turner v. Safley*, 482 U.S. 78, 85 (1987) (noting the high degree of deference which must be afforded to prison authorities in the "inordinately difficult undertaking" of running a prison system). As correctly noted by the magistrate judge, at least two of the rational bases found in *Moss* are equally applicable here — relieving overcrowding in the prisons and preserving uniformity of treatment between inmates who are incarcerated together. *See Moss*, 886 F.2d at 691-92; *see also Counts*, 951 F.Supp. at 585 (concluding that even if he were similarly situated, the inmate's claim would fail because he "ha[d] not alleged that the Commonwealth of Virginia ha[d] no rational reason for housing him in a local jail instead of a state prison"). Because there are legitimate, plausible reasons for the alleged disparate treatment between state inmates housed in local jails and inmates housed in state facilities, our inquiry is concluded. *See FCC*, 508 U.S. at 313-14. Accordingly, we affirm the district court's dismissal of the equal protection claim for the additional reason that there is a rational basis for the Director's challenged action.

### III.

For the foregoing reasons, the judgment of the district court is affirmed.

*AFFIRMED*